Edward S. HOLLOMON, Appellant,

v.

The STATE of Texas, Appellee.

No. 3–81–007–CR.

Court of Appeals of Texas, Austin.

May 19, 1982.

Rehearing Denied June 9, 1982.

**940** ■

Frank Maloney, Frank Maloney & Associates, Austin, for appellant.

Neal Pfeiffer, Criminal Dist. Atty., Charles D. Penick, Asst. Dist. Atty., Bastrop, for appellee.

SHANNON, Justice.

Appellant Edward S. Hollomon appeals from a judgment of conviction for murder after a trial by jury in the district court of Bastrop County. The jury assessed punishment of confinement for forty years in the Texas Department of Corrections. This Court will affirm the judgment.

Over appellant's objection, the district court admitted into evidence appellant's written confession. That writing shows that appellant drove a van from Houston toward Austin in the early morning hours of Sunday, June 24, 1979. About thirty or forty miles east of Austin in Bastrop County, he drove into a roadside park because the van had run out of gas.

A young man and woman, Robert T. Carter and Merlina Shippey, happened to be at the roadside park. Appellant asked to borrow some gas, and when Carter refused and asked appellant to leave them alone, appel-

lant shot Carter in the face and then set fire to Carter's clothing and bedding.

At the death of Carter, Merlina Shippey, in appellant's words, "got upset," and appellant with the assistance of a male comrade "loaded" her into the comrade's Blazer. The two then left the van at the park and proceeded away in the Blazer. Appellant, and then his partner, "had sex" with her. Appellant then stopped on a side road and released the woman. As she walked away, appellant shot her two or three times and left her body in a nearby gully. Thus these ill-starred youths, in stopping at the park, like netted birds, met death where they had only looked for sleep. Homer, *The Odyssey*, Book XXII, at 340 (Penguin Classics, 1956).

Although appellant claims error by sixteen grounds, his pivotal complaint is that the court erred in admitting into evidence appellant's written confession since that writing was, in his words, the "involuntary product of an illegal detention."

Investigating officers found the abandoned van in the roadside park and traced its ownership to a Mr. Hollomon in Houston. On Monday morning, June 25, Texas Ranger Clayton Smith called Mr. Hollomon and learned the van belonged to appellant, Hollomon's son, who was in a hospital in Hempstead. Ranger Joe Davis, who was assisting Smith in the investigation, called his mother-in-law, a nurse at the Hempstead hospital, to inquire whether appellant was a patient in the hospital, and, if so, to request that he be detained if he tried to leave. The nurse told Davis that appellant was in the hospital and that she could not hold appellant against his will, but that she would encourage him to stay if he attempted to depart. The nurse subsequently called the Waller County sheriff and informed him of the Ranger's telephone call. The sheriff later called the nurse to tell her to summon him if appellant started to leave the hospital. The sheriff did not go to the hospital nor did he place a guard there.

Appellant's first communication with peace officers occurred shortly after noon on June 25, when Rangers Smith and Davis arrived at the Hempstead hospital and were

taken to appellant's room. After the officers entered the room and identified themselves to appellant, Smith read appellant the *Miranda* warning, and asked him if he understood. Appellant nodded affirmatively and replied "yes." The Rangers testified the warning was given as a precautionary measure to insure that appellant had been properly informed of his rights in the event he made subsequent incriminating statements. Ranger Davis next asked appellant if he knew why they were there. Appellant replied "It's about that boy and girl at the roadside park." Appellant then proceeded to give voluntary statements over the next hour concerning the killings.

The Rangers testified that appellant's statements were given voluntarily and in narrative form, with the officers occasionally asking him non-leading questions. After making the oral statements, appellant told the Rangers he would be willing to make a written statement. The Rangers asked appellant's attending physician if he would release appellant from the hospital. After being assured appellant was physically able to be discharged, the Rangers and appellant went to the Waller County courthouse. After again receiving the *Miranda* warning and again acknowledging that he understood it, appellant gave a written statement which, in essence, paralleled the oral statements he made in the hospital. The face of the statement contained the warning of rights and the required waiver of those rights required by Tex.Code Crim.Pro. art. 38.22, § 2 (1979).

After appellant gave the written statement, he was taken to a magistrate's office for the warning required by Tex.Code Crim. Pro. art. 15.17 (1979). Appellant and the Rangers waited for thirty minutes at the office until the magistrate arrived and gave appellant the warning.

At trial, the State tendered the written confession as proof of appellant's guilt. Appellant objected, and after a hearing to determine the admissibility of the confession, the district court admitted it.

After trial and upon appellant's request, the district court filed supplemental findings of fact and conclusions of law concerning the voluntariness and admissibility of the confession. The relevant findings were:

2. The defendant was not in custody from the time that Ranger Davis called the Waller County Hospital at 10:30 a. m. on June 25, 1979.

3. Those warnings required by *Miranda* and the Texas Code of Criminal Procedure were administered to Defendant by Clayton Smith immediately upon their entering Defendants [sic] hospital room near noon on June 25, 1979. Shortly after noon Ranger Smith, Ranger Joe Davis and Mrs. Aileen Rape again administered those warnings, being the warnings shown upon the written confession of the Defendant. Upon Defendant's arrest, near 3:00 a. m. Defendant was taken before a Justice of the Peace in Waller County, Texas who administered those warnings required by Magistrates by the Texas Code of Criminal Procedure. Later, the same afternoon a Justice of the Peace in Bastrop County, Texas, administered those same warnings to the Defendant in Travis County, Texas, upon his transfer to that County.

4. & 5. The Court finds the Defendant had the mental and physical capacity to understand those warnings given him and did in fact understand those warnings. On each such occasion the Defendant was rational, and coherent. The Defendant, through words and actions acknowledged on each occasion that he understood the warnings given. On the making of his written confession, the Defendant in fact read such statement and made certain corrections thereupon prior to signing the same. Although the Defendant's answers were slow, his answers were responsive and coherent.

6. The Court finds the defendant knowingly, intelligently, and voluntarily waived his rights as evidenced by his actions and statements from the time he was first approached in the hospital through the making of his confessions and his leading the officers back to the scenes of the crimes in Bastrop and Travis County, [sic] Texas.

\* \* \* \* \* \*

8. & 9. 10. & 11. Upon the Defendant making a legally admissible written confession, the Texas Rangers had probable cause to arrest the Defendant and did in fact place the Defendant in custody and did take the Defendant immediately before a Magistrate in Waller County, Texas, as soon as one was located. Immediately after the Defendants [sic] having been placed in custody and having been taken before a Magistrate in Waller County, Texas, the Rangers caused to be filed a complaint charging the Defendant with Capital Murder in Bastrop County, Texas and the Defendant was immediately transported to Bastrop County, Texas where he was taken before a Magistrate in that County for the statutorily required Magistrate's warnings.

\* \* \* \* \* \*

14. The Court finds there were no intervening factors in the course of said statements which affected their voluntariness or admissibility pursuant to the United States or Texas Constitution or Texas Code of Criminal Procedure.

\* \* \* \* \* \*

22. The Court finds that the Defendant was sane, mentally competent, and rational from the time he was first approached in the hospital room in Waller County through the period of time that he took the officers to the scene of the Shippey killing. Although slow at times, his answers were always rational, responsive, and coherent. He communicated normally and logically with officers during all relevant periods of time during the making of his statements.

■ Appellant initially contends he was detained at approximately 10:00 a. m. on Monday, June 25 when the sheriff of Waller County told the nurse over the telephone he would stop appellant if appellant tried to leave the hospital. The contention is without merit.

Texas Code Crim.Pro.Ann. art. 15.22 (1979) provides "a person is arrested when he has been actually placed under restraint or taken into custody . . . by an officer or person arresting without a warrant." Although physical coercion or restraint of an individual is not required to place him under arrest, *Hardinge v. State*, 500 S.W.2d 870, 873 (Tex.Cr.App.1973), an officer or other arresting person is usually present and is exercising some character of dominion or control over the defendant. In *Hardinge*, for example, a security guard investigating Hardinge's suspicious behavior questioned him and after receiving unsatisfactory answers "held" him until the police arrived. Similarly, in *White v. State*, 601 S.W.2d 364 (Tex.Cr.App.1980), the officers did not utter formal words of arrest, but subdued White and held him at gunpoint "spread-eagled" against a trailer. *Maldonado v. State*, 528 S.W.2d 234, 237 (Tex.Cr. App.1975), also provides no support for appellant's position. In that case, a police officer restrained Maldonado from leaving the courthouse, took him to a room, and periodically questioned him over a three hour period, thus leading to the obvious conclusion Maldonado was under arrest during that time period.

The Waller County sheriff's telephone statements to the nurse hardly constituted an arrest or detention. The sheriff never went to the hospital while appellant was there, nor did he place a guard outside the hospital or the room occupied by appellant. The claimed "long-distance" arrest, effected by a peace officer who never approached appellant and of whom appellant was completely unaware, is not the character of physical restraint contemplated by art. 15.-22 or indicated by *Hardinge, White,* or *Maldonado.*

Appellant next argues that he was detained or arrested when Rangers Smith and Davis arrived at his hospital room after noon on June 25. The Rangers admitted that when they arrived at the hospital the only fact they knew connecting appellant with the crimes under investigation was that appellant's van was abandoned at the roadside park where Robert Carter's body was found. This fact was obviously not "probable cause" upon which the officers could base an arrest of appellant. The

Rangers testified they wanted to interview appellant to obtain any knowledge he might have either as a witness to the crime or as the discoverer of Carter's body that might assist their investigation. Before conversing with appellant, the Rangers gave appellant *Miranda* warnings in the event he made a statement connecting himself to the crime, a possibility the Rangers plainly could not dismiss.

Although the Rangers were by this time, in effect, detaining appellant, our view is that they acted within their proper authority. Law enforcement officers have the legal right to detain persons for questioning in a criminal investigation if they know specific facts, or inferences from those facts, that warrant the temporary detention. *Milton v. State*, 549 S.W.2d 190, 193 (Tex.Cr.App.1977). In the present case, the Rangers knew that the presence of appellant's abandoned van at the roadside park where Carter's body was discovered might reasonably indicate appellant knew facts that could assist in the investigation of the crime. They also refused to eliminate the possibility that appellant might be involved in the crime; therefore, they prudently informed him of his *Miranda* rights and ascertained that he understood those rights.

Once appellant confessed to the murder of Carter, it is most unlikely the Rangers would have permitted him to leave. At that point in time, appellant's temporary investigatory detention must have elevated into an arrest. And there is little question, the officers had probable cause to arrest appellant. The fact that the Rangers did not have a warrant for appellant's arrest is immaterial, as it cannot be seriously argued that the officers should have been required to leave a person who has confessed to a homicide to obtain a warrant with the delusive hope that the person would wait about for their return. *See* Tex.Code Crim.Pro. Ann. art. 14.04; *Trammell v. State*, 445 S.W.2d 190, 192 (Tex.Cr.App.1969). In this regard, the record shows that appellant, although in the hospital, was not physically incapacitated and but for the presence of the Rangers could have departed at any time.

After the initial hour long conversation with the Rangers, appellant stated he would voluntarily make a written statement. Appellant then accompanied the peace officers to the Waller County courthouse where, after proper warnings, a secretary took appellant's statement, typed it, and had appellant sign it. The statement included on its face the warnings and waiver required by Tex.Code Crim.Pro.Ann. art. 38.22, § 2 (1979).

In our view, appellant was not illegally detained or arrested. His confession was freely and voluntarily given. As appellant's statements made his involvement in the crime increasingly apparent to the Rangers, their legal cause to detain him was correspondingly elevated.

Appellant argues *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979) requires this Court to hold that appellant was illegally detained. In *Dunaway*, the defendant was brought into the police station on admittedly less than probable cause in a general investigation of a crime. His detention was held to be improper in light of that court's previous decisions in *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) and *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975).

The behavior of the Rangers in this case is altogether dissimilar to the coercive, domineering police activity present in *Wong Sun, Brown,* or *Dunaway*. *See Dowdy v. State*, 534 S.W.2d 336, 339 (Tex.Cr.App. 1976) and *compare Green v. State*, 615 S.W.2d 700, 703, 705–6 (Tex.Cr.App.1980) (police with warrant based on less than probable cause kicked in door and seized suspect at gunpoint). Furthermore, the illegality of the arrest or detention in those cases resulted because the confessing suspect had been taken into custody on *less than* probable cause.

In the case at bar, the Rangers initially interviewed appellant as a person who might know relevant facts related to their

investigation. At that time they undisputedly had no probable cause for an arrest of appellant. Nevertheless, they had the right to visit with appellant about the presence of his van at the murder site. The Rangers informed appellant that he could refuse to answer their questions. When, in the course of that conversation, appellant confessed, probable cause for his arrest surely existed. The written confession was, we conclude, made during a legal arrest based upon probable cause. *See Trammell v. State, supra.*

Under appellant's view, any discussion peace officers may have with persons who may have knowledge of a crime becomes an illegal detention, and any confession made during that interview therefore becomes irrevocably tainted. Such a contention, in our opinion, comports neither with sound logic nor law.

■ Assuming *arguendo* an illegal arrest, the written confession is not *per se* inadmissible. The U. S. Supreme Court has stated:

The *Miranda* warnings are an important factor, to be sure, in determining whether the confession is obtained by exploitation of an illegal arrest. But they are not the only factor to be considered. The temporal proximity of the arrest and the confession, the presence of intervening circumstances, [citation omitted] and, *particularly*, the purpose and flagrancy of the official misconduct are all relevant.

*Brown v. Illinois*, 422 U.S. 590, 603–4, 95 S.Ct. 2254, 2261–62, 45 L.Ed.2d 416 (1975) (emphasis added); *see also Green v. State*, 615 S.W.2d 700, 708 (Tex.Cr.App.1981).

Although the Supreme Court in *Brown* listed four factors, plainly the Court intended the purpose and flagrancy of official misconduct to be the most important factor in determining the nexus between the illegal arrest and confession. *See Rawlings v. Kentucky*, 448 U.S. 98, 110, 100 S.Ct. 2556, 2564, 65 L.Ed.2d 633 (1980). In the case at bar, there was no misconduct on the part of Rangers Smith and Davis, flagrant or otherwise. In addition, the evidence plainly shows appellant was accorded *Miranda* warnings. As indicated by the Supreme

Court in *Brown*, whether a confession is the product of a free will must, of course, be answered upon the facts of each case. Under the facts of this case, this Court has concluded the appellant's confession was an act of free will and the district court properly admitted the written confession into evidence.

Appellant claims further error in the district court's admission of oral statements he allegedly made to the Rangers. The content of these statements was cumulative of appellant's written confession, and accordingly, we need not rule on the admissibility of the oral statements.

■ Appellant also claims the evidence indicates he could not voluntarily and intelligently waive his *Miranda* rights at the time he confessed to the murder. Witnesses testified at trial that appellant appeared to be acting strange and intoxicated or distracted during the two days subsequent to the murder and about the time appellant confessed. However, these witnesses also testified that while appellant responded slowly to questions, he answered clearly and coherently. Rangers Smith and Davis testified appellant responded appropriately to their inquiries. We conclude the evidence supports the trial court's findings of fact that appellant understood his *Miranda* rights and voluntarily and intelligently waived those rights.

■ In a related ground of error, appellant argues the court erred in excluding certain expert testimony as to appellant's capacity to waive his rights when he confessed. During trial, the defense called Dr. Victor Yanchick, professor of pharmacy at the University of Texas, to testify whether defendant could have understood and intelligently waived his *Miranda* rights prior to confessing to Robert Carter's murder. The defense directed a long hypothetical question concerning appellant's use of prescription drugs in the months prior to the murder, traumatic events which occurred to appellant during this time, and the events surrounding the murder and appellant's subsequent flight and unusual behavior.

Outside the presence of the jury, the following dialogue occurred:

> [Defense attorney:] We have two questions before the Court. One is, is the State—is the Court going to sustain the State's objection to the question of what is happening to this individual, and the second question is, is the Court going to sustain the State's objection to the question, given his cognitive deterioration, hypothetical deterioration at this time? Could he have acknowledged those rights read to him, and if assuming that he could have waived those rights. Those are the two questions that the State has objected to.
>
> [Prosecutor:] That calls for a legal conclusion.
>
> [The Court:] I am going to overrule the first objection at this time. I will sustain the second objection to the proffer at this time.

The "second objection" referred to above was directed to the defense attorney's question, "Given these facts, would this defendant in your opinion be competent to give a written statement to an officer ... and by competency, I am asking, could he have intelligently and knowingly waived those rights guaranteed to him by the *Miranda* decision. Could he have waived those rights read to him by the officer?"

The question was asked again in the presence of the jury for the record, but was rephrased as follows:

> [Defense attorney:] Let's assume that this hypothetical individual waives those rights and commences to speak with the Texas rangers. Now, in your opinion, could this—could this hypothetical individual have understood those rights?
>
> [Prosecutor:] Your Honor, I object. That calls for a legal conclusion on the part of the witness.
>
> [The Court:] Sustain the objection.
>
> . . . .
>
> [Defense attorney:] Could he have normally and intelligently—knowingly and intelligently waived the rights that were read to him?
>
> [Prosecutor:] Same objection, Your Honor.

[The Court:] Sustained.

Appellant argues in his sixth ground of error the district court erred in excluding the pharmacologist's testimony as to appellant's ability to understand and waive his rights. Appellant notes expert testimony is allowed on the issue of whether an accused has the mental capacity to intelligently waive his *Miranda* rights. *Price v. State*, 496 S.W.2d 103 (Tex.Cr.App.1973); *Grayson v. State*, 438 S.W.2d 553 (Tex.Cr.App.1969).

Two questions are relevant to the disposition of this ground of error: (1) Did the question posed Dr. Yanchick require him to state a legal conclusion? and (2) Is there other evidence in the record which is cumulative of Dr. Yanchick's opinion testimony, thereby rendering the district court's exclusion of the opinion evidence not reversible error?

The Court of Criminal Appeals has outlined the requirements for the admission of expert opinion testimony in *Hopkins v. State*, 480 S.W.2d 212 (Tex.Cr.App.1972). The Court held an expert's opinion on whether a witness suffering from a psychological disorder might distort facts was not subject to the objection such testimony "invaded the province of the jury." The Court repudiated the notion that the testimony of the witness would "invade the province of the jury" and stated an expert could give his opinion if three requisites were met: (1) the expert was competent and qualified to testify, (2) the expert's opinion on the subject would aid the jury, and (3) the expert's opinion was not in the form of a legal conclusion. *Id.* at 218. For example, an expert who opined whether a particular witness was competent to testify would be stating a legal conclusion, and his opinion on this subject would not be allowed. *Id.* at 219.

In the present appeal, objections were sustained to counsel's questions asking Dr. Yanchick whether appellant would be competent to waive his *Miranda* rights, whether he could have understood those rights, and whether he could have knowingly and intel-

ligently waived those rights. This Court is of the opinion those questions did not require Dr. Yanchick to state a legal conclusion. Outside the presence of the jury, appellant's attorney asked the doctor if appellant was "competent" to waive his rights. This inquiry was directed at appellant's mental capacity to make an important decision. He was not asked whether appellant was "competent" *to testify at trial*, which would obviously require him to make a legal conclusion. One of the two questions asked before the jury was whether defendant was able to *understand* his rights. This question plainly did not ask the doctor to state a legal conclusion. The other question inquired as to whether appellant could "knowingly and intelligently waive" his rights. While "waiver" may have a specialized legal meaning, the thrust of this question was directed at appellant's *mental ability* to forego those rights, rather than an inquiry as to whether he did, in fact, "waive" those rights.

Basically, the questions posed to Yanchick included terms such as "competent" and "waiver" which may have a special legal significance, but they did not require the witness to state an opinion on a question of law. A determination that the questions did ask for a legal conclusion would elevate the form of these questions over their substance. The expert was simply asked to give an opinion he was qualified to state. The district court should have overruled the State's objection.

However, in our view, the excluded testimony was cumulative of other evidence in the record of appellant's alleged incapacity. Dr. Yanchick, himself, testified appellant may have been experiencing psychological withdrawal symptoms from discontinued drug use, or suffering from "toxic depressive psychosis," which could have made appellant confused or disoriented after the murders. Other witnesses who observed appellant in the two days subsequent to the murders testified that although appellant answered questions coherently, his answers were delayed and slow, and he seemed intoxicated or distracted. In view of this evidence of appellant's condition, we believe the opinion testimony appellant tendered was cumulative and the district court's refusal to admit it was not reversible error.

▪ In ground of error ten, appellant argues the district court erred in refusing to submit his requested charge on voluntary manslaughter. The nub of the voluntary manslaughter offense is that a murder was committed "under the immediate influence of sudden passion arising from adequate cause." Tex.Penal Code Ann. § 19.04 (1974). When a defendant accused of murder requests a charge on voluntary manslaughter, the court is required, of course, to submit that charge if the issue is raised by the evidence. *E.g., Medlock v. State*, 591 S.W.2d 485, 486 (Tex.Cr.App.1979). Testimony of the defendant, alone, is sufficient to raise the issue. *Id.* Therefore, the issue in the present appeal is whether evidence was introduced to warrant an instruction on voluntary manslaughter.

In the confession, appellant detailed the events preceding the murder. He stated he was driving from Houston to Austin at nighttime, ran out of gas, and drove into a roadside park. There he awakened Robert Carter and Merlina Shippey, who were camping in the park. In appellant's own words, "I asked him [Carter] if he knew where I could get some gas, and the man told me, no, just to go on and leave them alone. We got into an argument and I shot him with a Saturday night special."

A charge on voluntary manslaughter is properly refused where there is no evidence of adequate cause. *McCartney v. State*, 542 S.W.2d 156, 160 (Tex.Cr.App.1976). In *McCartney*, the accused argued with his girlfriend, went to a restroom, returned five minutes later and shot her. The Court concluded the evidence was insufficient to raise an issue of voluntary manslaughter because there was no evidence of adequate cause. Similarly, in this appeal, appellant stated he asked Carter about gas, Carter asked appellant to leave them alone, they argued, and appellant shot Carter. Because no evidence of adequate cause for the shooting was presented, the district court

properly refused to give the instruction. Appellant's ground of error is overruled.

Appellant has other grounds of error, all of which have been examined, and none of which are meritorious.

The judgment is affirmed.