LEE 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-93-00372-CR







Tinesha Lee, Appellant



v.



The State of Texas, Appellee









FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT


NO. 0922296, HONORABLE WILFORD FLOWERS, JUDGE PRESIDING







 

 A jury convicted appellant Tinesha Lee of capital murder committed during an
attempted robbery. Act of April 23, 1985, 69th Leg., R.S., ch. 44, § 1, 1985 Tex. Gen. Laws
434, 434 (Tex. Penal Code Ann. § 19.03(a)(2), since amended). Because the State elected not
to seek the death penalty, the district court sentenced appellant to life imprisonment. Tex. Penal
Code Ann. § 12.31(a) (West 1994). (1) By five points of error, appellant challenges her conviction. 
We will reverse the trial court's judgment and remand the cause for a new trial.



BACKGROUND


 Early in the morning on March 20, 1992, Peter Selvera was shot and killed during
an attempted robbery in the parking lot of a South Austin nightclub. Witnesses at the scene gave
police a description of the assailants and their vehicle, including its license plate number. Police
traced the car to Houston, and Sergeants Jesse Vasquez and John Hunt of the Austin Police
Department traveled to Houston to investigate. The officers located the car, and discovered that
Porsha Sweeney, appellant's boyfriend, owned the car.

 Appellant was with Sweeney when the police reached him for questioning on the
afternoon of March 24, 1992. After the officers explained that they were investigating a murder
in Austin, appellant and Sweeney agreed to accompany them to the Houston Police Department
for an interview. Both were interviewed that evening, (2) and the police then drove them home. 
Appellant and Sweeney agreed to return for more questioning the following day.

 While Sweeney was taking a polygraph test on March 25, 1992, appellant and the
officers drove to north Houston to find "Topcat," which proved to be futile. The officers then
confronted appellant concerning the truth of her first statement. Appellant admitted that she had
information about the murder, but feared disclosing it; she agreed, however, to make a second
statement. Appellant stated to the police that she had overheard several individuals telling
Sweeney that "Kim" had attempted to rob someone as part of a gang initiation into the "Five
Deuce Hoovers," which is part of the "Crips" gang.

 In the meantime, Sweeney had failed his polygraph, and told the officers that Roy
Bradley could clear up everything if Sweeney could speak with him. Bradley was brought to the
station, and after speaking with Sweeney for about fifteen minutes, Bradley confessed that he shot
Selvera. The officers confronted Bradley with inconsistencies between his statement and other
information that they had about the crime, and Bradley admitted that he lied and retracted his
statement. (3) 

 Based on the available information, the officers decided to arrest appellant at some
time between 9:00 and 10:00 p.m. on the evening of March 25, 1992. Appellant was arrested
without a warrant and was placed in jail. On the morning of March 26, 1992, appellant gave a
tape-recorded oral confession to Sergeant John Swaim of the Houston Police Department and
Sergeant Vasquez. A warrant for her arrest was not obtained until after appellant confessed to
the murder.

 After a jury trial in which appellant and Sweeney were tried as co-defendants, (4)
appellant was convicted of the capital murder of Selvera and the trial court assessed punishment
at life imprisonment. Appellant challenges her conviction by five points of error.



DISCUSSION


 In her first point of error, appellant argues that her tape-recorded confession was
erroneously admitted in evidence because it was the fruit of an illegal warrantless arrest. Under
Article 38.23 of the Code of Criminal Procedure, evidence obtained in violation of either the
federal or state constitutions or laws cannot be admitted against a defendant at trial. Tex. Code
Crim. Proc. Ann. art. 38.23(a) (West Supp. 1995). Generally, police officers must obtain a
warrant before arresting a suspect. Dejarnette v. State, 732 S.W.2d 346, 349 (Tex. Crim. App.
1987). Once a defendant establishes that the arrest occurred without a warrant, the burden shifts
to the State to demonstrate that the arrest was made pursuant to a statutory exception to the
warrant requirement. Beasley v. State, 728 S.W.2d 353, 355 (Tex. Crim. App. 1987).

 The State argued during the pretrial hearing and on appeal that the warrantless
arrest was lawful under the "exigent circumstances" statutory exception:



Where it is shown by satisfactory proof to a peace officer, upon the representation
of a credible person, that a felony has been committed, and that the offender is
about to escape, so that there is no time to procure a warrant, such peace officer
may, without warrant, pursue and arrest the accused.



Tex. Code Crim. Proc. Ann. art. 14.04 (West 1977). Article 14.04 does not require a showing
that the offender actually was about to escape nor does it require a showing that there was in fact
no time to procure a warrant; the statute merely requires that an officer have satisfactory proof
that the offender is about to escape and that there is no time to procure a warrant. Crane v. State,
786 S.W.2d 338, 347 (Tex. Crim. App. 1990); see Smith v. State, 739 S.W.2d 848, 852 (Tex.
Crim. App. 1987) (requiring proof of existence of circumstances that made procuring warrant
impracticable).

 In analyzing a warrantless arrest, we must examine whether a combination of
factors exists to support a reasonable conclusion that there was probable cause to make the arrest
without a warrant: the information that a crime has been committed, the knowledge by the
arresting officers of the facts of the crime, the arresting officers' observations, and the arresting
officers' basis for believing that the suspect would take flight. Allridge v. State, 850 S.W.2d 471,
491 (Tex. Crim. App. 1991), cert. denied, 114 S. Ct. 101 (1993). In determining whether an
officer could reasonably have believed that the suspect would escape, we must consider the
temporal proximity of the actions of the suspect both to the commission of the crime and to the
suspect's discovery of the police investigation of him. Id.; Dejarnette, 732 S.W.2d at 352.

 Appellant does not assert that the officers lacked probable cause to arrest her; she
instead claims that they had no reason to believe that she was about to escape so as to justify the
warrantless arrest. The State argues that the police had satisfactory proof that appellant would
escape before officers could procure a warrant. See Crane, 786 S.W.2d at 347.

 The officers were aware of the following facts when they arrested appellant: 
appellant generally drove the car that was used in the commission of the murder because Sweeney,
the owner of the car, did not have a driver's license; appellant was associated with a gang, and
the murder was part of a gang initiation; Sweeney and appellant both initially stated that "Topcat"
borrowed the car on the night of the murder, indicating that the two had conspired and fabricated
this story in the hope of taking the "heat" of the investigation off of them; after officers confronted
appellant about the veracity of her initial statement, appellant gave a second statement which
indicated that she had intimate knowledge regarding the circumstances surrounding the murder;
appellant feared retaliation from other gang members because of the disclosures she made to the
police; and appellant was living with Sweeney in what appeared to be a crack house, was
unemployed, and had no ties to the community. Additionally, the police knew that the murder
weapons had not yet been recovered, and that at least four or five people had been implicated in
the murder by either appellant, Sweeney, or Bradley, none of whom had been found at that time. 
The police feared that if appellant were released, other persons would be alerted about the
investigation and evidence might be destroyed.

 Appellant argues that the police had no proof that she was about to escape because
she remained at the police station after her second statement for approximately five hours before
she was arrested. She also argues that she had no knowledge of Bradley's statements to the police
and, therefore, had no reason to believe that she was any more a suspect on March 25 than she
had been on March 24. 

 We disagree with appellant that the police lacked satisfactory proof that she would
escape. Appellant did have additional reason to believe she was a suspect, given that she realized
the police were examining her statements and confronting her about inconsistencies. Indeed,
appellant's second statement indicated facts the police knew about the crime, facts that only a
person intimately involved would know. We agree with the State that the police had satisfactory
proof that appellant was aware that she was a prime suspect in the case and that she would likely
flee if the police released her until they could obtain a warrant. See Allridge, 850 S.W.2d at 491.

 The police must also show, however, that they had satisfactory proof that there was
no time to procure a warrant. Appellant argues that although the police testified about the
difficulty of procuring a warrant, they made no showing that it would have been impossible to
obtain a warrant. No showing of impossibility is required; the State only has to show that, under
the circumstances, procuring the warrant was impracticable. Smith, 739 S.W.2d at 852. 
Appellant cites Hardison v. State, 597 S.W.2d 355, 357 (Tex. Crim. App. 1980), for the
proposition that the State must present evidence that attempts to locate a magistrate were
unsuccessful. In Hardison, however, the Court of Criminal Appeals indicated that the officer
testified that he could have obtained a warrant, and presented no testimony concerning the amount
of time it would have taken to procure a warrant. Id.

 In contrast, Officers Hunt and Vasquez both testified as to why they believed they
did not have time to procure a warrant. Arrest warrants had to be obtained from Travis County,
where the offense occurred. Vasquez explained that the procedure would have taken five or six
hours because the officers in Austin that Hunt and Vasquez were working with had left for the day
and no judge was available because of the lateness of the hour when they decided to arrest
appellant. (5) Vasquez testified that the officers decided to arrest appellant sometime around 10:00
p.m., but a warrant for her arrest could not have been obtained before 5:00 or 6:00 a.m. the next
morning.

 Examining the testimony at trial, we conclude that the officers did have
satisfactory proof that they did not have time to procure a warrant. See Allridge, 850 S.W.2d at
491; Dejarnette, 732 S.W.2d at 352 (proximity in time to the discovery of pursuit is a factor to
consider in whether there was time to procure warrant); Dotsey v. State, 630 S.W.2d 343, 348
(Tex. App.--Austin 1982, no pet.) (warrantless arrest upheld where defendant was stopped late at
night because "[d]elay to obtain an arrest warrant was neither feasible nor practical under the
circumstances"). We conclude that appellant's warrantless arrest was justified; the police should
not be forced to release a person who is aware that she is a prime suspect "with the delusive hope
that the person would wait about for their return." Hollomon v. State, 633 S.W.2d 939, 943
(Tex. App.--Austin 1982, pet. ref'd); see Salazar v. State, 688 S.W.2d 660, 663 (Tex.
App.--Amarillo 1985, no pet.). Having concluded that appellant's arrest was legal, we need not
address whether her confession was the fruit of an illegal arrest. We overrule appellant's first
point of error.

 In her second point of error, appellant argues that the trial court erred in admitting
appellant's involuntary confession into evidence. Under Article 38.23, evidence is inadmissible
if it was obtained in violation of an appellant's federal or state constitutional or statutory rights. 
Tex. Code Crim. Proc. Ann. art. 38.23(a) (West Supp. 1995). Appellant argues that her
confession was involuntary because it was induced by the police officers who interviewed her on
March 26, the day after her arrest.

 Sergeant Vasquez performed a tape-recorded interview with appellant. During this
interview, Vasquez told appellant that she would be given "consideration" if she would cooperate
with police, and at one point asked appellant, "When somebody cooperates, don't they always get
some kind of benefit?" Vasquez also informed appellant that "you hold the cards as to whether
it is capital or consideration is given to a lesser included offense. I can't tell you what is going
to be involved in that consideration, but it makes common sense that it is going to be less than
capital murder." Vasquez also admitted at trial that he told appellant that people often get reduced
sentences because they talk. When appellant refused to confess, Vasquez terminated the
interview. Sergeant Swaim entered the interview room, spoke with appellant for approximately
ten minutes, (6) and informed Vasquez that appellant wanted to confess. The officers recorded
appellant's confession, which subsequently was admitted at trial.

 "An inculpatory statement obtained as a result of a benefit positively promised to
a defendant made or sanctioned by one in authority and of such a character as would be likely to
influence a defendant to speak untruthfully is not admissible." Hardesty v. State, 667 S.W.2d
130, 134 (Tex. Crim. App. 1984). The promise, however, must be shown to have induced the
confession before the court will hold the confession inadmissible. Muniz v. State, 851 S.W.2d
238, 254 (Tex. Crim. App.), cert. denied, 114 S. Ct. 116 (1993). In order to induce a
confession, the statement must be: (1) positive, (2) made or sanctioned by someone in authority,
and (3) of such an influential nature that a defendant would speak untruthfully in response to the
promise. Id.

 In Muniz, officers told appellant that leniency was sometimes shown when a
defendant confessed. The Court of Criminal Appeals concluded that this was simply a statement
of fact and that appellant had failed to demonstrate that the officers positively and unequivocally
promised leniency in return for a confession. Id.; Washington v. State, 582 S.W.2d 122, 124
(Tex. Crim. App. 1979) (promise must be unequivocal to render confession involuntary).

 Examining the statements that Vasquez made to appellant, we conclude that they
did not unequivocally and positively promise appellant any sort of benefit. Appellant was simply
told that she might be given "consideration" if she cooperated with police. Although Vasquez
stated to appellant that it made common sense that someone who confessed would be charged with
a lesser offense, he also stated that he did not know what would be involved in any consideration
given as a result of her confession. Indeed, immediately after Vasquez made this statement, he
reiterated that he could not promise appellant that consideration would be given or what that
consideration would entail. Vasquez indicated at least four times during the interview that he
could not promise appellant anything. Vasquez's statements did not rise to the level of
unequivocal promises of a benefit to appellant. Nor can appellant show how a statement that
consideration might be given is so influential that it would cause her to speak untruthfully. See
Muniz, 851 S.W.2d at 254 (officer's promise to contact charitable organizations on behalf of
defendant's family did not render confession involuntary because it was not the type of promise
that "could influence a person to untruthfully confess to [a] heinous crime"); Hardesty, 667
S.W.2d at 134. Vasquez's statements to appellant did not render her confession involuntary. (7) 

 After Vasquez terminated the interview, Sergeant Swaim spoke with appellant;
appellant then agreed to confess. During the pretrial hearing, appellant testified that Swaim
informed her that no woman had ever received the death penalty in Texas and that she would
probably only receive a sixty-year sentence of which she would only serve five or six years.
Appellant also testified that Swaim told her he believed she would be convicted of a lesser crime
than capital murder. During the pretrial hearing and at trial, Swaim denied telling appellant that
no woman had received the death penalty and that she would only serve five years if she had not
fired the fatal shot.

 At a hearing on the voluntariness of the confession, the trial court is the exclusive
judge of the credibility of the witnesses and a reviewing court will not overturn the trial court's
findings absent an abuse of discretion. Long v. State, 823 S.W.2d 259, 277 (Tex. Crim. App.
1991), cert. denied, 112 S. Ct. 3042 (1992); Gentry v. State, 770 S.W.2d 780, 790 (Tex. Crim.
App. 1988), cert. denied, 490 U.S. 1102 (1989). Because the State controverted all of appellant's
allegations concerning Swaim's statements, the court acted within its authority in disbelieving
appellant's testimony. See Muniz, 851 S.W.2d at 253-54. The trial court did not abuse its
discretion in concluding that Swaim's alleged statements did not render the confession involuntary. 
Because neither Vasquez's nor Swaim's statements to appellant constituted promises that induced
her confession, we overrule appellant's second point of error.

 In her fifth point of error, appellant argues that the trial court erred in failing to
charge the jury that Darius Thomas was an accomplice witness as a matter of law. Thomas, who
was in Sweeney's car during the time that the offense was committed, testified for the State about
appellant's involvement in the murder of Selvera. (8) Although Thomas originally had been arrested
for the murder of Selvera, he subsequently was indicted only for the aggravated robbery of
Selvera. At the time Thomas testified, he was still under indictment, and had been incarcerated
for more than a year on the charges arising out of this offense, although the State had discussed
the possibility of a plea bargain with Thomas's attorney.

 Appellant requested an instruction in the jury charge that Thomas was an
accomplice witness as a matter of law. In response, the lead prosecutor testified that he believed
that the evidence was insufficient to prosecute Thomas; thus, Thomas was not an accomplice
witness. Because a fact question was raised as to whether Thomas was an accomplice witness,
the trial court submitted the issue to the jury as to whether Thomas was an accomplice witness as
a matter of fact. See Gamez v. State, 737 S.W.2d 315, 322 (Tex. Crim. App. 1987).

 Under Article 38.14 of the Code of Criminal Procedure, an accomplice witness's
testimony must be corroborated by other evidence in the record which tends to connect the
defendant with the crime committed. Tex. Code Crim. Proc. Ann. art. 38.14 (West 1979);
Gamez, 737 S.W.2d at 322-23. The jury instructions for an accomplice as a matter of law and
as a matter of fact are similar except for one crucial difference: the jury is instructed that the
testimony of one who is an accomplice witness as a matter of law must be corroborated by other
evidence, while an accomplice witness as a matter of fact instruction allows the jury first to decide
whether the witness is in fact an accomplice, and requires corroboration of the testimony only if
the jury concludes that the witness is an accomplice.

 Appellant argues that because Thomas was a co-indictee, the trial court should have
instructed the jury that he was an accomplice witness as a matter of law. As a general rule, a co-indictee is an accomplice witness as a matter of law. Burns v. State, 703 S.W.2d 649, 651 (Tex.
Crim. App. 1985); Harris v. State, 645 S.W.2d 447, 454 (Tex. Crim. App. 1983); Kerns v. State,
550 S.W.2d 91, 94 (Tex. Crim. App. 1977); Creek v. State, 533 S.W.2d 794, 795 (Tex. Crim.
App. 1976). Although the witnesses in the cases cited above were all indicted for the same
offense as the defendants, while the witness in the present case was indicted for a lesser included
offense, we believe that the co-indictee rule applies (9) and that the trial court should have instructed
the jury that Thomas was an accomplice witness as a matter of law. We reject the State's
argument that we should examine whether Thomas was actually involved in the murder before
deciding whether the accomplice as a matter of fact instruction was erroneous. The indictment
of Thomas and his incarceration for more than one year indicates that the State believed Thomas
was more than an innocent observer. The State cannot indict a person, keep the co-indictee in
jail until the trial, obtain the co-indictee's testimony at trial, and then allow the prosecutor to
testify that because the State lacks sufficient evidence to prosecute the co-indictee, he is not an
accomplice witness. Such a subversion of the accomplice witness rule is clearly impermissible. 
We choose instead to follow the well-established rule that a co-indictee is an accomplice witness
as a matter of law. See Burns, 703 S.W.2d at 651.

 Our conclusion that the trial court erroneously submitted an "accomplice witness
as a matter of fact" instruction to the jury does not end our analysis. Because appellant timely
objected to this error in the charge, we must determine whether a reversal is required because the
error was "`calculated to injure the rights of defendant,' which means no more than that there
must be some harm to the accused from the error." Almanza v. State, 686 S.W.2d 157, 171 (Tex.
Crim. App. 1984); see Tex. Code Crim. Proc. Ann. art. 36.19 (West 1981).

 Appellant relies on Burns for the proposition that reversible error was committed
by the court's erroneous instruction. Burns, 703 S.W.2d at 649. She argues that the only
evidence besides Thomas's testimony linking her to the crime was her own confession. Appellant
contends that because the charge allowed the jury to make a finding that her confession was
involuntary, the jury could have found her confession involuntary, but also could have concluded
that Thomas was not an accomplice witness and, thus, relied solely on Thomas's testimony in
convicting appellant. See Tex. Code Crim. Proc. Ann. art. 38.23(a) (West Supp. 1995) (if
evidence raises issue as to whether evidence was obtained in violation of the federal or state
constitutions or laws, jury must be instructed to disregard the evidence if it believes the evidence
was obtained in violation); Tex. Code Crim. Proc. Ann. art. 38.14 (West 1979). We agree that
Burns is applicable to this case. In Burns, the Court of Criminal Appeals reversed the appellants'
convictions because the only other evidence linking the appellants to the crime was their out-of-court statements, which had been submitted to the jury under a charge that allowed the jury to
make a fact finding that the statements were involuntary. Burns, 703 S.W.2d at 652. The court
reasoned:



Thus, we are presented with a situation where the jury correctly following the jury
charge as given, quite plausibly could have improperly convicted appellants
because they could have found the statements involuntary and yet convicted
appellants on [the accomplice witness's] testimony alone. The conviction would
then be based on the erroneous finding that [the witness] was not an accomplice
and that, therefore as per the charge, his testimony needed no corroboration in
order to be sufficient to sustain a conviction.



Id. Our case involves the identical situation because the voluntariness of appellant's confession
was submitted to the jury, and the jury could have found that the confession was involuntary, yet
relied solely on Thomas's testimony to convict.

 The State argues that because the Burns court relied on the test pronounced in
Gonzales v. State, 441 S.W.2d 539, 542 (Tex. Crim. App. 1969), which was subsequently
disapproved in Saunders v. State, 817 S.W.2d 688, 690 (Tex. Crim. App. 1991), we are not
required to follow it. We disagree. Although the court in Saunders, 817 S.W.2d at 690,
concluded that Gonzales "should no longer be considered vital to the criminal jurisprudence of
Texas," it specified that the general Almanza rule should be applied to determine harm:



[T]he actual degree of harm must be assayed in light of the entire jury charge, the
state of the evidence, including the contested issues and weight of probative
evidence, the argument of counsel and any other relevant information revealed by
the record of the trial as a whole.



Id. (quoting Almanza, 686 S.W.2d at 171). We believe that the Burns analysis is equally viable
under the general standard pronounced in Almanza. Indeed, the court in Burns used the Almanza
standard as well as Gonzales in its decision. We must reverse if appellant's confession is the only
evidence connecting her to the offense. 

 The other evidence admitted at trial included: a witness at the scene who testified
that the person he saw at the scene was a large heavy-set person, and indicated that appellant was
"about the right size"; appellant's second statement, which indicated that she had intimate
knowledge of the crime because it corroborated information the police had previously obtained
about the crime; and the .38 caliber pistol recovered at the vacant house matched bullets that were
removed from Selvera's body during the autopsy. None of this evidence is sufficient to
corroborate Thomas's testimony. Although the corroborative testimony does not have to directly
link the accused to the crime or be sufficient in itself to establish guilt, it must tend to connect the
defendant with the crime. Reynolds v. State, 489 S.W.2d 866, 872 (Tex. Crim. App. 1972). We
do not believe, however, that this evidence tends to connect appellant with the offense committed. 
The witness identification is too vague to supply corroboration. Although the evidence that the
gun found at the vacant house was the same as the gun used in the murder is sufficient to connect
the gun to the scene, the State points to no evidence that the gun was somehow linked to appellant. 
Finally, appellant's second statement is as consistent with her hearing about the crime from one
of the participants as it is with her active involvement in the offense.

 Because the only evidence that corroborated Thomas's testimony was appellant's
confession, we hold that the possibility that the conviction was the result of an improper charge
constitutes error that resulted in at least some harm calculated to injure the rights of appellant. 
Almanza, 686 S.W.2d at 157. We sustain appellant's fifth point of error.

 Having sustained appellant's fifth point of error, necessitating reversal and remand
for a new trial, we find it unnecessary to address her third and fourth points concerning a jury
shuffle and a challenge for cause to a venireperson. The judgment of the trial court is reversed
and the cause is remanded for new trial.



 

 Mack Kidd, Justice

Before Chief Justice Carroll, Justices Jones and Kidd

Reversed and Remanded

Filed: March 15, 1995

Do Not Publish

1.   This offense occurred before September 1, 1994, and is governed by the law in effect
at the time the offense was committed. Penal Code, 73rd Leg., R.S., ch. 900, § 1.18,
1993 Tex. Gen. Laws 3586, 3705. Because the code amendments effective September 1,
1994 have no substantive effect on this provision, the current code is cited for the sake of
convenience.
2.   Both appellant and Sweeney gave similar statements that evening: a man named
"Topcat" had borrowed the car; appellant stated the car was returned sometime after
midnight and Sweeney stated that the car was returned between 2:00 and 3:00 a.m. on
March 20, 1992. The officers knew this information was incorrect because Selvera's
murder had occurred around 3:30 a.m. 
3.   Bradley subsequently gave a second statement that implicated appellant and
Sweeney in the murder.
4.   See Sweeney v. State, no. 3-93-373-CR (March 15, 1995).
5.   Vasquez explained what the process of procuring the warrant required and why it
took so much time:


Five- or six- hour period refers to contacting the officer, getting him in . . .
faxing that information to him, having him review it, having him locate a
judge, he'll have to call, find a judge that time of night. . . . Then he will
have to go out to that judge, present the affidavit, if it is accepted it is signed. 
The affidavit is taken to a municipal court so a warrant can be issued. The
warrant would then be taken to the judge to be signed. You are talking
about 30 minutes to an hour for each of these items that's happening.
6.   Swaim's interview was not recorded.
7.   We also note that the interview ended without appellant giving any type of statement
and that it was only after Sergeant Swaim spoke with her that appellant agreed to confess
to the murder.
8.   Thomas testified that he drove to Austin with appellant and co-defendant Sweeney;
they all drank beer and smoked "weed" during the drive; he slept in the back seat until
appellant tapped him on the shoulder and informed him that she was about to commit a
"187," which is a homicide in gangster rap; he saw appellant approach Selvera with a .38
and he heard Selvera say "no"; appellant and Selvera began wrestling, and appellant
began to yell for help; Sweeney then got out of the car with a shotgun and told Selvera to
release appellant; Selvera released her and Sweeney shot him in the face; appellant then
shot Selvera; they both ran back to the car, found a vacant house where they hid the
weapons, and then returned to Houston.
9.   Indeed, the jury instructions contained a form that allowed the jury to convict
appellant of aggravated robbery if the evidence would not support a murder conviction.