Mike Edward SALAZAR, Appellant,

v.

The STATE of Texas, Appellee.

No. 07–83–0031–CR.

Court of Appeals of Texas, Amarillo.

Feb. 28, 1985.

Gene Storrs, Storrs & Stokes, Amarillo, for appellant.

Randall Sherrod, Dist. Atty., John L. Davis, Asst. Dist. Atty., Canyon, for appellee.

Before REYNOLDS, C.J., and COUNTISS and BOYD, JJ.

COUNTISS, Justice.

Appellant was convicted of murder, Tex. Penal Code Ann. § 19.02 (Vernon 1974), and sentenced to 45 years in the penitentiary. He contends, by one ground of error, that his confession was the inadmissible product of an illegal arrest. We affirm.

In the early morning hours of June 20, 1981, an Amarillo motorist discovered a badly beaten body lying in the 58th Street roadway. Deputy Sheriff Joel Richardson of the Randall County Sheriff's Department was one of the officers dispatched to the scene. The decedent, Manual Andy Jimenez, had apparently been stripped of identification, but Richardson learned his name and address from fingerprint comparisons. Richardson went to the address and notified the family of the death. During their conversation, Jimenez' father pointed

out his son's car, parked down the street in front of appellant's residence.

Richardson and another officer briefly looked over Jimenez' car and Richardson noticed a shoe print near the car similar to one he had seen near the body. At that point Richardson, believing someone in the house may have been at the crime scene, went to the house, where he was invited inside by appellant's sister, who was also decedent's wife.

Once inside, the officers advised Mrs. Jimenez of her husband's death and asked if she knew where her husband had been on the preceding night. She told the officers that he had been with appellant and another brother, Martin Salazar. At some point unclear in the record, Mrs. Jimenez invited the officers into her brothers' presence.

The officers, who admitted that the Salazar brothers would not have been allowed to leave after Mrs. Jimenez' statement, asked the brothers to step out onto the front porch. Deputy Richardson said the brothers voluntarily accompanied them.

On the porch, the officers noticed apparent bloodstains on the brothers' pants and shoes. At that point, they gave the *Miranda* warnings and Richardson asked Martin Salazar if he could inspect the soles of his tennis shoes. Martin complied and Richardson observed that the soles were similar to the shoe prints near the car and at the crime scene. The officers then told appellant and his brother that they were under arrest for investigation of homicide. A short time later, appellant confessed that he and his brother had beaten Jimenez to death with a tire bumper.

Appellant contends his confession is the inadmissible product of an illegal arrest. Specifically, appellant says the officers had neither probable cause to arrest him nor facts justifying a warrantless arrest. We do not agree.

■ We begin with the principle that law enforcement officers have the right to detain a person for questioning in a criminal investigation, if the detention is (1) based upon reasonable suspicion, and (2) limited in time and obtrusiveness of the detention and in scope of the investigation. *United States v. Brignoni-Ponce*, 422 U.S. 873, 881–82, 95 S.Ct. 2574, 2580–81, 45 L.Ed.2d 607 (1975); *Ussery v. State*, 651 S.W.2d 767, 770 (Tex.Crim.App.1983). Here, by the time the officers asked the brothers to step outside, they had observed the decedent's car in front of the house, and had seen a shoe print similar to one observed near the body. They also knew the brothers had been with the decedent the previous evening, and they knew the decedent had been beaten and was bloody. Certainly those facts gave the officers a reasonable basis to suspect that appellant and his brother were connected with the commission of the crime, *Ussery, supra*, and were sufficient "for temporarily detaining [the defendants] while they attempted to verify or dispel their suspicions in a manner that did not exceed the limits of an investigative detention." *Florida v. Royer*, 460 U.S. 491, 502, 103 S.Ct. 1319, 1326, 75 L.Ed.2d 229, 239 (1983).

■ After the brothers stepped outside, the officers could observe their bloody clothing and the similarity of the twice-observed shoe print and the print on Martin Salazar's shoe. When that information was combined with the other information possessed by the officers, they clearly had probable cause to arrest appellant. *Milton v. State*, 549 S.W.2d 190, 194 (Tex.Crim. App.1977).

■ The second requirement of *Brignoni-Ponce* was also satisfied, because the investigative detention lasted only a short time, was not obtrusive and was confined to the single issue being pursued by the officers.

Appellant points out, however, that the only pertinent Texas statute justifying a warrantless arrest is article 14.04 of the Code of Criminal Procedure Annotated (Vernon 1977), which permits a warrantless arrest as follows:

> Where it is shown by satisfactory proof to a peace officer, upon the repre-

sentation of a credible person, that a felony has been committed, and that the offender is about to escape, so that there is no time to procure a warrant, such peace officer may, without warrant, pursue and arrest the accused.

There is no evidence, says appellant, that (1) the officers had satisfactory proof, (2) the persons directing the officers to appellant were credible persons, or (3) he was about to escape.

■ Satisfactory proof under article 14.04 is the equivalent of probable cause. *Earley v. State*, 635 S.W.2d 528, 531 (Tex. Crim.App.1982). It may be based on a combination of information from others and observations of the officer. *Walker v. State*, 555 S.W.2d 454, 456 (Tex.Crim.App. 1977). As discussed above, the officers had facts within their knowledge amounting to probable cause, and this information was also satisfactory proof under the article.

■ Credible persons, as used in the context of article 14.04, does not mean unnamed confidential informants who must satisfy one of the eclectic rules constructed by the U.S. Supreme Court. Rather, it means ordinary citizens relating information of which they had direct knowledge. *Esco v. State*, 668 S.W.2d 358, 360–61 (Tex. Crim.App.1982); *Mena v. State*, 504 S.W.2d 410, 413 (Tex.Crim.App.1974); *Frazier v. State*, 480 S.W.2d 375, 378–80 (Tex.Crim. App.1972). That is the role played by the decedent's relatives, who directed the officers to appellant's house, and the officers were entitled to rely upon their representations when approaching appellant.

Finally, in *Guzman v. State*, 521 S.W.2d 267 (Tex.Crim.App.1975) and *Trammell v. State*, 445 S.W.2d 190 (Tex.Crim.App.1969) the Court of Criminal Appeals found warrantless arrests to be permissible under article 14.04, where defendants were arrested under facts comparable to those present here, even though the officers did not expressly recite into the record their fear that the defendants might flee if left alone while a warrant was sought. The Austin Court of Appeals put the matter

into proper perspective when it observed, in *Hollomon v. State*, 633 S.W.2d 939, 943 (Tex.App.—Austin 1982, pet. ref'd):

The fact that the Rangers did not have a warrant for appellant's arrest is immaterial, as it cannot be seriously argued that the officers should have been required to leave a person who has confessed to a homicide to obtain a warrant with the delusive hope that the person would wait about for their return.

■ Here, appellant and his brother were wearing vital evidence and were surrounded by incriminating circumstances. There was a reasonable basis for believing they had brutally beaten a man to death and stripped him of all papers in order to delay identification. Additionally, we know they had access to vehicles for flight. Under those circumstances, and knowing they were prime suspects, only an incurable optimist would conclude that the brothers Salazar were not "about to escape" if the officers left to seek a warrant. While it would have been helpful if the officers had stated their concern in that regard, we do not think we are limited to consideration of an oral recitation of that fact; we can also look at the rest of the record and determine from all of the facts and circumstances whether such a danger existed. Clearly it did here. Appellant's ground of error is overruled.

The judgment is affirmed.

REYNOLDS, C.J., not participating.