NOS. 07-03-0001-CR, 07-03-0002-CR, 07-03-0003-CR, & 07-03-0004-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

DECEMBER 16, 2003

_____


WILLIAM DARRELL EDWARDS, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 181st DISTRICT COURT OF POTTER COUNTY;

NOS. 42,912-B, 42,914-B, 42,915-B, & 42,916-B;

HONORABLE JOHN BOARD, JUDGE

_____

Before JOHNSON, C.J., and REAVIS and CAMPBELL, JJ.

**MEMORANDUM OPINION**


A Potter County Grand Jury returned four indictments against appellant William Darrell Edwards for numerous counts of aggravated sexual assault of a child and two counts of indecency with a child. The cases were consolidated in one trial and, after

appellant pled not guilty to all of the charges, the jury found him guilty and assessed as punishment life sentences for the aggravated sexual assault counts and twenty year terms for the indecency charges. Following a request by the State, the trial court ordered the sentences run consecutively. By this appeal, appellant challenges the trial court's failure to suppress statements and physical evidence obtained by police following his warrantless arrest. We will affirm.

On September 17, 2000, Allison Edwards was at home with her infant daughter, A.E., her ten year old daughter from a prior marriage, M.C., and her current husband, appellant. In the afternoon, appellant and M.C. went outside to play. At some point, Edwards began to look for them and thought of the family's motor home which was parked in the driveway. Believing appellant and M.C. might be inside, Edwards entered the motor home. When she walked through the door, she saw appellant "sort of leaned over the bed at the back" with M.C. lying on the bed. Appellant's penis was erect and protruding from the left side of his underwear and shorts. His penis appeared to be wet or lubricated or to have a condom on it. Edwards immediately pulled M.C. away from appellant and told her to go inside the house. She then ordered appellant to retrieve his belongings and leave. After packing a few of her own things, Edwards loaded her daughters in the car and began to drive away. Before she could pull out of the driveway, however, appellant entered the car and "told [her] he was sorry." Edwards responded that she did not care about his apology and told him to call her when he had cleared his belongings out of the house. Again, appellant told her he was sorry.

Edwards drove to her parents' house and related to them what she had just witnessed. At her mother's suggestion, Edwards phoned the hospital and spoke with an individual who referred her to Amarillo Police Officer Justin Taylor, who happened to be at the hospital on an unrelated matter. Taylor advised Edwards to take M.C. to the hospital where she could be physically examined. When Taylor inquired of appellant's whereabouts, Edwards informed him that appellant was at home packing his belongings.

Taylor visited briefly with Edwards and M.C. after they arrived at the hospital. According to Taylor, Edwards told him she had caught her husband having sex with her ten year old daughter. As a result of his conversations with Edwards and M.C., Taylor suspected a felony offense had been committed and he had a "significant concern" that appellant would leave. Specifically, Taylor believed appellant might flee the jurisdiction. Resultantly, Taylor contacted police dispatch and requested officers to locate appellant, detain him, and transport him to the police station. Officers located appellant at his home and detained him, but they transported him to the hospital instead. Upon appellant's arrival, Taylor placed him in a holding room, advised him of his *Miranda*[1] warnings, and requested a statement from him. Appellant provided a written statement admitting that he fondled M.C.'s genitals earlier that day, and that M.C. touched his genitals as well. He also admitted inserting a cotton swab into M.C.'s vagina in February or March to check for bleeding. After providing the statement, appellant signed a consent to search form

---

[1] *See* Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

3

authorizing the police to search his and Edwards's home. Police secured similar consent from Edwards.

After M.C.'s sexual assault exam, Edwards returned to her house, where she discovered appellant's belongings in various stages of packing. As she began to load some of his things into the car, she uncovered on the front porch a bag containing, among other things, children's bikini underwear, douche bottles, and a video cassette tape. Taylor and appellant arrived at the house between 20 and 30 minutes after Edwards. At that time, Edwards revealed the items she had found on the porch and requested that Taylor view the videotape. Edwards, Taylor, and appellant then entered the house and watched the video, which depicted graphic sexual encounters between appellant and M.C. Edwards discerned that one of the recorded events occurred on November 24, 1999, and the other between the dates of August 14 and September 17, 2000. After viewing the video tape, Taylor "formally arrested [a]ppellant." During their subsequent search of the front porch, the house, and the car containing many of appellant's belongings, officers located, among other items, nude photographs of M.C. and her other sister, seven year old C.C.[2]

Having reviewed the evidence recovered from Edwards and appellant's house, Sergeant Kevin Dockery, the child abuse investigator assigned to investigate the case, approached appellant at the "Correction Center," where he was being housed. Dockery

---

[2]The record does not reflect whether appellant was prosecuted for engaging in inappropriate behavior with C.C.

"wanted to gain some further information that hadn't been gathered in the investigation." After advising appellant of his *Miranda* warnings, Dockery obtained a written statement, in which appellant admitted penetrating M.C.'s hymen on at least four occasions, performing oral sex on M.C. "over ten times," and having M.C. perform oral sex on him "under ten times." Also, according to appellant, he and M.C. would "video tape each other."

With five issues, appellant claims the trial court erred in admitting into evidence incriminating statements and physical evidence seized by police following his illegal, warrantless arrest. With the first two issues, appellant asserts the admission of the evidence violated his state and federal constitutional rights against unreasonable searches and seizures. By his third issue, appellant challenges the admissibility of the evidence under article 14 of the Code of Criminal Procedure[3] authorizing warrantless arrests under certain circumstances. According to appellant's fourth issue, the trial court erred in admitting evidence that should have been excluded under article 38.23.[4] (Vernon Supp. 2004). Finally, by his fifth issue, appellant claims he was harmed by the erroneous admission of the evidence. With each issue, we disagree.

---

[3]All references to articles are to the Texas Code of Criminal Procedure, unless otherwise designated. (Vernon 1997).

[4]Article 38.23, the Texas "exclusionary rule," provides: "No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case."

Though appellant did not file a pretrial motion to suppress the evidence referenced above, he did object to its admission when the State offered it at trial. Following the objection, the trial court recessed the jury, conducted a suppression hearing, and determined the evidence to be admissible. In reviewing that ruling, we will give almost total deference to the trial court's determination of historical facts and review *de novo* the court's application of the law of search and seizure. State v. Ross, 32 S.W.3d 853, 856 (Tex.Cr.App. 2000). Here, despite the State's insistence that appellant was merely "detained" at the time the police officers transported him from his house to the hospital, the trial court determined that "this was a custodial situation." But beyond finding that the officers had probable cause to arrest appellant, the trial court made no explicit findings of historical fact pertaining to whether appellant's warrantless arrest was justified under any of the exceptions to the warrant requirement. Thus, we review the evidence in the light most favorable to the trial court's ruling. O'Hara v. State, 27 S.W.3d 548, 550 (Tex.Cr.App. 2000).

At the outset, we must determine whether appellant was arrested or merely detained when officers located him at his house and transported him to the hospital. The State maintained at trial that "while [appellant] was detained, he was not in custody." Similarly, on appeal, the State insists that "[a]t most, appellant was the focus of investigation of a felony sex crime for which there was probable cause to arrest." Considering the circumstances surrounding appellant's "detention," we disagree. In determining whether a person is in custody, we consider: (1) probable cause to arrest; (2) subjective intent of

6

the police; (3) focus of the investigation; and (4) subjective belief of the defendant. Dowthitt v. State, 931 S.W.2d 244, 254 (Tex.Cr.App. 1996). Factors two and four have become irrelevant except to the extent that they may be manifested in the words or actions of law enforcement officials; instead, the custody determination is based entirely upon objective circumstances. *Id*.

In this case, appellant was approached at his home by one or more officers who handcuffed him,[5] placed him in the back seat of a police car, and transported him to the hospital where he was met by another officer, Taylor, who placed him in a "security holding room" commonly used to detain prisoners. Taylor then advised appellant that he was suspected of committing felony offenses, including sexual assault of a child and indecency with a child, and "explained to him that he was being detained." Appellant remained at the hospital for at least three hours before providing police with the first of his written statements. Although Taylor insisted appellant was not under arrest at that time, but rather, "was being detained," the officer never told him he was free to leave. In fact, Taylor admitted that if appellant suddenly decided to run off, he would have grabbed him. Under the foregoing circumstances, a reasonable person would have believed that his freedom of movement was restrained to the degree associated with a formal arrest. *Id*. Contrary to the State's assertion, it was not just the officers' use of handcuffs to restrain appellant that created a custodial atmosphere. Thus, we conclude appellant was arrested when

---

[5]The record does not reveal what information, if any, the officers shared with appellant before they took him into custody.

7

officers approached him at his home, handcuffed, him and transported him to the hospital. Having so concluded, we must next determine whether appellant's warrantless arrest was lawful.

In Texas, a police officer may only arrest an individual without a warrant if (1) there is probable cause with respect to that individual and (2) the arrest falls within one of the exceptions specified in the Code of Criminal Procedure. *See* Arts. 14.01–.04. In an argument alternative to the one discussed above, the State asserts that "the warrantless arrest of [a]ppellant was legitimately made under Article 14.04." That article provides that where it is shown by satisfactory proof to a peace officer, upon the representation of a credible person, that a felony has been committed, and that the offender is about to escape, so that there is no time to procure a warrant, the peace officer may, without a warrant, pursue and arrest him. Satisfactory proof under article 14.04 is the equivalent of probable cause. Salazar v. State, 688 S.W.2d 660, 663 (Tex.App–Amarillo 1985, no pet.).

Probable cause exists where the facts and circumstances within the officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that a particular person has committed or is committing an offense. Amores v. State, 816 S.W.2d 407, 413 (Tex.Cr.App. 1991). In determining whether an officer has probable cause for an arrest, Texas courts apply the totality of the circumstances analysis. Tribble v. State, 792 S.W.2d 280, 284 (Tex.App.–Houston [1ˢᵗ Dist.] 1990, no pet.). The test for probable cause in the

case of police broadcasts is the information known to the officer who made the broadcast request. Williams v. State, 621 S.W.2d 609, 611 (Tex.Cr.App.1981).

Here, the trial court relied upon Edwards's recitation to Taylor of her observations of appellant and M.C. in the motor home as the basis for probable cause to arrest appellant. In analyzing whether an officer had probable cause to arrest when receiving information from a crime victim or witness, the focus does not appear to be on the validity or accuracy of the information, but on whether the officer was justified in relying on what was told him. Mungia v. State, 911 S.W.2d 164, 167 (Tex.App.–Corpus Christi 1995, no pet.) Indeed, the modern position is that any person purporting to be a crime victim or witness may be presumed reliable, though the police must remain alert to the existence of any circumstances which would make that presumption inoperative in a particular case. *Id*. (*quoting* W. LaFave, Search and Seizure: A Treatise on the Fourth Amendment, § 3.4(a), p. 719 (West 1987)). We see no reason not to indulge that presumption with regard to the information Edwards conveyed to Taylor. The record reveals she told Taylor that she "caught her husband with her daughter," and she "believed they were having sex." According to Taylor, when he talked to Edwards on the telephone about 20 minutes after the offense, she seemed "[s]omewhat upset, but rattled. Confused." We, therefore, find that Taylor was justified in believing that Edwards was a credible person, within the

meaning of article 14.04, and that Taylor had satisfactory proof that a felony was committed.[6]  In short, Taylor possessed probable cause to order appellant's arrest.

We next decide whether there was satisfactory proof that appellant was about to escape.  The relevant question under article 14.04 is whether the information available to the officer ordering the arrest would justify the belief that appellant would take flight if not placed in custody, so that there is no time to procure a warrant.  *Tribble*, 792 S.W.2d at 284 (*citing* West v. State, 720 S.W.2d 511, 517 (Tex.Cr.App. 1986), *cert. denied*, 481 U.S.1072, 107 S.Ct. 2470, 95 L.Ed.2d 878 (1987)).  Article 14.04 does not require proof that the suspect was, in fact, about to escape or that there was, in fact, no time to procure a warrant.  Crane v. State, 786 S.W.2d 338, 347 (Tex.Cr.App. 1990).  In determining whether an officer could reasonably have believed that a suspect would take flight, it is important to keep in mind the temporal proximity of the actions of the suspect, both to the commission of the crime, and to the suspect's discovery of the police investigation of him.  Allridge v. State, 850 S.W.2d 471, 491 (Tex.Cr.App. 1991), *cert. denied*, 510 U.S. 831, 114 S.Ct.101, 126 L.Ed.2d 68 (1993).

Here, less than an hour elapsed between the time of Edwards's discovery of the offense and the time of appellant's arrest.  Next, appellant became aware that he was under suspicion for sexual abuse of a child when Edwards interrupted him while he was

---

[6]Aggravated sexual assault and indecency with a child are felony offenses.  *See* Tex. Pen. Code Ann. § 21.11(d) (Vernon 2003) and § 22.021(e) (Vernon Supp. 2004).

engaged in a sex act with her ten year old daughter. It is clear appellant knew of Edwards's suspicions because when she queried "how long this had been going on," appellant responded, "[n]ot very long." Furthermore, appellant apologized to her on two separate occasions before Edwards departed for her parents' house. Once officers approached appellant at his home, he was on notice that a complaint had been made to law enforcement officials. *Tribble*, 792 S.W.2d at 284. Finally, Edwards informed Taylor that when she left home appellant was packing all of his belongings into his vehicle, preparing to depart for a destination unknown to her. Upon hearing that information, Taylor became concerned that appellant would leave the jurisdiction. Appellant was highly mobile at that point and could have easily escaped detection had police not intervened.[7] Hughes v. State, 24 S.W.3d 833, 839 (Tex.Cr.App. 2000); *see Salazar*, 688 S.W.2d at 663. Considering the totality of the circumstances, we find that the information available to Taylor justified his belief that appellant would escape if not placed in custody.

Under the federal constitution, officers can arrest without a warrant as long as they have probable cause. U.S. v. Watson, 423 U.S. 411, 423, 96 S.Ct. 820, 828, 46 L.Ed.2d

---

[7]In reaching this conclusion, we are not unsympathetic to appellant's assertion that proof that the suspect is merely moving from place to place is insufficient. Busby v. State, 990 S.W. 2d 263, 270 (Tex.Cr.App. 1986), *cert. denied*, 528 U.S. 1081, 120 S.Ct. 803, 145 L.Ed.2d 676 (2000). However, we are bound to consider only that evidence available to Taylor when he made the decision to order appellant's arrest. *See id.* At that time, Taylor was aware only that appellant was at his and Edwards's home, packing his belongings into the car, preparing to depart to an unknown destination. Taylor was unaware that appellant owned another home in town; therefore, we do not believe the evidence available to Taylor indicated appellant's plan was merely to move from his and Edwards's home to another house in town.

598, 609 (1976). Courts in Texas are in agreement that the current interpretation of article one, section 9 of the state constitution is consistent with the interpretation of the Fourth Amendment.[8] Aitch v. State, 879 S.W.2d 167, 171 (Tex.App.–Houston [14th Dist.] 1994, pet. denied). Therefore, because we have found probable cause existed to authorize appellant's warrantless arrest, his objection to the admission of physical evidence and incriminating statements under both federal and state constitutions must fail. As for appellant's statutory challenge, we find that the warrantless arrest was legitimately made under article 14.04. Because the evidence was lawfully obtained, the trial court did not err in failing to exclude it under article 38.23. (Vernon Supp. 2004). Finally, having determined that the challenged evidence was properly obtained, appellant cannot be heard to complain that he was harmed by its admission. Resultantly, appellant's five issues are overruled.

Accordingly, the judgments of the trial court are affirmed.

Don H. Reavis
Justice

Do not publish.

---

[8]The Fourth Amendment to the United States Constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search and seizure, shall not be violated . . . ." Similarly, the Texas Constitution provides, in pertinent part: "The people shall be secure in their persons, houses, papers, and possessions, from all unreasonable searches and seizures . . . ." Tex. Const. art. I, § 9.