NOS. 07-03-0001-CR, 07-03-0002-CR, 07-03-0003-CR, & 07-03-0004-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



DECEMBER 16, 2003



______________________________




WILLIAM DARRELL EDWARDS, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 181st DISTRICT COURT OF POTTER COUNTY;



NOS. 42,912-B, 42,914-B, 42,915-B, & 42,916-B;



 HONORABLE JOHN BOARD, JUDGE



_______________________________



Before JOHNSON, C.J., and REAVIS and CAMPBELL, JJ.

MEMORANDUM OPINION


 A Potter County Grand Jury returned four indictments against appellant William
Darrell Edwards for numerous counts of aggravated sexual assault of a child and two
counts of indecency with a child. The cases were consolidated in one trial and, after
appellant pled not guilty to all of the charges, the jury found him guilty and assessed as
punishment life sentences for the aggravated sexual assault counts and twenty year terms
for the indecency charges. Following a request by the State, the trial court ordered the
sentences run consecutively. By this appeal, appellant challenges the trial court's failure
to suppress statements and physical evidence obtained by police following his warrantless
arrest. We will affirm.

 On September 17, 2000, Allison Edwards was at home with her infant daughter,
A.E., her ten year old daughter from a prior marriage, M.C., and her current husband,
appellant. In the afternoon, appellant and M.C. went outside to play. At some point,
Edwards began to look for them and thought of the family's motor home which was parked
in the driveway. Believing appellant and M.C. might be inside, Edwards entered the motor
home. When she walked through the door, she saw appellant "sort of leaned over the bed
at the back" with M.C. lying on the bed. Appellant's penis was erect and protruding from
the left side of his underwear and shorts. His penis appeared to be wet or lubricated or to
have a condom on it. Edwards immediately pulled M.C. away from appellant and told her
to go inside the house. She then ordered appellant to retrieve his belongings and leave. 
After packing a few of her own things, Edwards loaded her daughters in the car and began
to drive away. Before she could pull out of the driveway, however, appellant entered the
car and "told [her] he was sorry." Edwards responded that she did not care about his
apology and told him to call her when he had cleared his belongings out of the house. 
Again, appellant told her he was sorry.

 Edwards drove to her parents' house and related to them what she had just
witnessed. At her mother's suggestion, Edwards phoned the hospital and spoke with an
individual who referred her to Amarillo Police Officer Justin Taylor, who happened to be at
the hospital on an unrelated matter. Taylor advised Edwards to take M.C. to the hospital
where she could be physically examined. When Taylor inquired of appellant's
whereabouts, Edwards informed him that appellant was at home packing his belongings. 

 Taylor visited briefly with Edwards and M.C. after they arrived at the hospital. 
According to Taylor, Edwards told him she had caught her husband having sex with her
ten year old daughter. As a result of his conversations with Edwards and M.C., Taylor
suspected a felony offense had been committed and he had a "significant concern" that
appellant would leave. Specifically, Taylor believed appellant might flee the jurisdiction. 
Resultantly, Taylor contacted police dispatch and requested officers to locate appellant,
detain him, and transport him to the police station. Officers located appellant at his home
and detained him, but they transported him to the hospital instead. Upon appellant's
arrival, Taylor placed him in a holding room, advised him of his Miranda (1) warnings, and
requested a statement from him. Appellant provided a written statement admitting that he
fondled M.C.'s genitals earlier that day, and that M.C. touched his genitals as well. He also
admitted inserting a cotton swab into M.C.'s vagina in February or March to check for
bleeding. After providing the statement, appellant signed a consent to search form
authorizing the police to search his and Edwards's home. Police secured similar consent
from Edwards.

 After M.C.'s sexual assault exam, Edwards returned to her house, where she
discovered appellant's belongings in various stages of packing. As she began to load
some of his things into the car, she uncovered on the front porch a bag containing, among
other things, children's bikini underwear, douche bottles, and a video cassette tape. Taylor
and appellant arrived at the house between 20 and 30 minutes after Edwards. At that time,
Edwards revealed the items she had found on the porch and requested that Taylor view
the videotape. Edwards, Taylor, and appellant then entered the house and watched the
video, which depicted graphic sexual encounters between appellant and M.C. Edwards
discerned that one of the recorded events occurred on November 24, 1999, and the other
between the dates of August 14 and September 17, 2000. After viewing the video tape,
Taylor "formally arrested [a]ppellant." During their subsequent search of the front porch,
the house, and the car containing many of appellant's belongings, officers located, among
other items, nude photographs of M.C. and her other sister, seven year old C.C. (2) 

 Having reviewed the evidence recovered from Edwards and appellant's house,
Sergeant Kevin Dockery, the child abuse investigator assigned to investigate the case,
approached appellant at the "Correction Center," where he was being housed. Dockery
"wanted to gain some further information that hadn't been gathered in the investigation." 
After advising appellant of his Miranda warnings, Dockery obtained a written statement, in
which appellant admitted penetrating M.C.'s hymen on at least four occasions, performing
oral sex on M.C. "over ten times," and having M.C. perform oral sex on him "under ten
times." Also, according to appellant, he and M.C. would "video tape each other." 

 With five issues, appellant claims the trial court erred in admitting into evidence
incriminating statements and physical evidence seized by police following his illegal,
warrantless arrest. With the first two issues, appellant asserts the admission of the
evidence violated his state and federal constitutional rights against unreasonable searches
and seizures. By his third issue, appellant challenges the admissibility of the evidence
under article 14 of the Code of Criminal Procedure (3) authorizing warrantless arrests under
certain circumstances. According to appellant's fourth issue, the trial court erred in
admitting evidence that should have been excluded under article 38.23. (4) (Vernon Supp.
2004). Finally, by his fifth issue, appellant claims he was harmed by the erroneous
admission of the evidence. With each issue, we disagree. 

 Though appellant did not file a pretrial motion to suppress the evidence referenced
above, he did object to its admission when the State offered it at trial. Following the
objection, the trial court recessed the jury, conducted a suppression hearing, and
determined the evidence to be admissible. In reviewing that ruling, we will give almost total
deference to the trial court's determination of historical facts and review de novo the court's
application of the law of search and seizure. State v. Ross, 32 S.W.3d 853, 856
(Tex.Cr.App. 2000). Here, despite the State's insistence that appellant was merely
"detained" at the time the police officers transported him from his house to the hospital, the
trial court determined that "this was a custodial situation." But beyond finding that the
officers had probable cause to arrest appellant, the trial court made no explicit findings of
historical fact pertaining to whether appellant's warrantless arrest was justified under any
of the exceptions to the warrant requirement. Thus, we review the evidence in the light
most favorable to the trial court's ruling. O'Hara v. State, 27 S.W.3d 548, 550 (Tex.Cr.App.
2000). 

 At the outset, we must determine whether appellant was arrested or merely detained
when officers located him at his house and transported him to the hospital. The State
maintained at trial that "while [appellant] was detained, he was not in custody." Similarly,
on appeal, the State insists that "[a]t most, appellant was the focus of investigation of a
felony sex crime for which there was probable cause to arrest." Considering the
circumstances surrounding appellant's "detention," we disagree. In determining whether
a person is in custody, we consider: (1) probable cause to arrest; (2) subjective intent of
the police; (3) focus of the investigation; and (4) subjective belief of the defendant. 
Dowthitt v. State, 931 S.W.2d 244, 254 (Tex.Cr.App. 1996). Factors two and four have
become irrelevant except to the extent that they may be manifested in the words or actions
of law enforcement officials; instead, the custody determination is based entirely upon
objective circumstances. Id. 

 In this case, appellant was approached at his home by one or more officers who
handcuffed him, (5) placed him in the back seat of a police car, and transported him to the
hospital where he was met by another officer, Taylor, who placed him in a "security holding
room" commonly used to detain prisoners. Taylor then advised appellant that he was
suspected of committing felony offenses, including sexual assault of a child and indecency
with a child, and "explained to him that he was being detained." Appellant remained at the
hospital for at least three hours before providing police with the first of his written
statements. Although Taylor insisted appellant was not under arrest at that time, but
rather, "was being detained," the officer never told him he was free to leave. In fact, Taylor
admitted that if appellant suddenly decided to run off, he would have grabbed him. Under
the foregoing circumstances, a reasonable person would have believed that his freedom
of movement was restrained to the degree associated with a formal arrest. Id. Contrary
to the State's assertion, it was not just the officers' use of handcuffs to restrain appellant
that created a custodial atmosphere. Thus, we conclude appellant was arrested when
officers approached him at his home, handcuffed, him and transported him to the hospital. 
 Having so concluded, we must next determine whether appellant's warrantless arrest was
lawful.

 In Texas, a police officer may only arrest an individual without a warrant if (1) there
is probable cause with respect to that individual and (2) the arrest falls within one of the
exceptions specified in the Code of Criminal Procedure. See Arts. 14.01-.04. In an
argument alternative to the one discussed above, the State asserts that "the warrantless
arrest of [a]ppellant was legitimately made under Article 14.04." That article provides that
where it is shown by satisfactory proof to a peace officer, upon the representation of a
credible person, that a felony has been committed, and that the offender is about to
escape, so that there is no time to procure a warrant, the peace officer may, without a
warrant, pursue and arrest him. Satisfactory proof under article 14.04 is the equivalent of
probable cause. Salazar v. State, 688 S.W.2d 660, 663 (Tex.App-Amarillo 1985, no pet.). 

 Probable cause exists where the facts and circumstances within the officer's
knowledge and of which he has reasonably trustworthy information are sufficient in
themselves to warrant a man of reasonable caution in the belief that a particular person
has committed or is committing an offense. Amores v. State, 816 S.W.2d 407, 413
(Tex.Cr.App. 1991). In determining whether an officer has probable cause for an arrest,
Texas courts apply the totality of the circumstances analysis. Tribble v. State, 792 S.W.2d
280, 284 (Tex.App.-Houston [1st Dist.] 1990, no pet.). The test for probable cause in the
case of police broadcasts is the information known to the officer who made the broadcast
request. Williams v. State, 621 S.W.2d 609, 611 (Tex.Cr.App.1981). 

 Here, the trial court relied upon Edwards's recitation to Taylor of her observations
of appellant and M.C. in the motor home as the basis for probable cause to arrest
appellant. In analyzing whether an officer had probable cause to arrest when receiving
information from a crime victim or witness, the focus does not appear to be on the validity
or accuracy of the information, but on whether the officer was justified in relying on what
was told him. Mungia v. State, 911 S.W.2d 164, 167 (Tex.App.-Corpus Christi 1995, no
pet.) Indeed, the modern position is that any person purporting to be a crime victim or
witness may be presumed reliable, though the police must remain alert to the existence of
any circumstances which would make that presumption inoperative in a particular case. 
Id. (quoting W. LaFave, Search and Seizure: A Treatise on the Fourth Amendment, §
3.4(a), p. 719 (West 1987)). We see no reason not to indulge that presumption with regard
to the information Edwards conveyed to Taylor. The record reveals she told Taylor that
she "caught her husband with her daughter," and she "believed they were having sex." 
According to Taylor, when he talked to Edwards on the telephone about 20 minutes after
the offense, she seemed "[s]omewhat upset, but rattled. Confused." We, therefore, find
that Taylor was justified in believing that Edwards was a credible person, within the
meaning of article 14.04, and that Taylor had satisfactory proof that a felony was
committed. (6) In short, Taylor possessed probable cause to order appellant's arrest. 

 We next decide whether there was satisfactory proof that appellant was about to
escape. The relevant question under article 14.04 is whether the information available to
the officer ordering the arrest would justify the belief that appellant would take flight if not
placed in custody, so that there is no time to procure a warrant. Tribble, 792 S.W.2d at
284 (citing West v. State, 720 S.W.2d 511, 517 (Tex.Cr.App. 1986), cert. denied, 481
U.S.1072, 107 S.Ct. 2470, 95 L.Ed.2d 878 (1987)). Article 14.04 does not require proof
that the suspect was, in fact, about to escape or that there was, in fact, no time to procure
a warrant. Crane v. State, 786 S.W.2d 338, 347 (Tex.Cr.App. 1990). In determining
whether an officer could reasonably have believed that a suspect would take flight, it is
important to keep in mind the temporal proximity of the actions of the suspect, both to the
commission of the crime, and to the suspect's discovery of the police investigation of him. 
Allridge v. State, 850 S.W.2d 471, 491 (Tex.Cr.App. 1991), cert. denied, 510 U.S. 831, 114
S.Ct.101, 126 L.Ed.2d 68 (1993). 

 Here, less than an hour elapsed between the time of Edwards's discovery of the
offense and the time of appellant's arrest. Next, appellant became aware that he was
under suspicion for sexual abuse of a child when Edwards interrupted him while he was
engaged in a sex act with her ten year old daughter. It is clear appellant knew of
Edwards's suspicions because when she queried "how long this had been going on,"
appellant responded, "[n]ot very long." Furthermore, appellant apologized to her on two
separate occasions before Edwards departed for her parents' house. Once officers
approached appellant at his home, he was on notice that a complaint had been made to
law enforcement officials. Tribble, 792 S.W.2d at 284. Finally, Edwards informed Taylor
that when she left home appellant was packing all of his belongings into his vehicle,
preparing to depart for a destination unknown to her. Upon hearing that information, Taylor
became concerned that appellant would leave the jurisdiction. Appellant was highly mobile
at that point and could have easily escaped detection had police not intervened. (7) Hughes
v. State, 24 S.W.3d 833, 839 (Tex.Cr.App. 2000); see Salazar, 688 S.W.2d at 663. 
Considering the totality of the circumstances, we find that the information available to
Taylor justified his belief that appellant would escape if not placed in custody. 

 Under the federal constitution, officers can arrest without a warrant as long as they
have probable cause. U.S. v. Watson, 423 U.S. 411, 423, 96 S.Ct. 820, 828, 46 L.Ed.2d
598, 609 (1976). Courts in Texas are in agreement that the current interpretation of article
one, section 9 of the state constitution is consistent with the interpretation of the Fourth
Amendment. (8) Aitch v. State, 879 S.W.2d 167, 171 (Tex.App.-Houston [14th Dist.] 1994,
pet. denied). Therefore, because we have found probable cause existed to authorize
appellant's warrantless arrest, his objection to the admission of physical evidence and
incriminating statements under both federal and state constitutions must fail. As for
appellant's statutory challenge, we find that the warrantless arrest was legitimately made
under article 14.04. Because the evidence was lawfully obtained, the trial court did not err
in failing to exclude it under article 38.23. (Vernon Supp. 2004). Finally, having
determined that the challenged evidence was properly obtained, appellant cannot be heard
to complain that he was harmed by its admission. Resultantly, appellant's five issues are
overruled.

 Accordingly, the judgments of the trial court are affirmed.


 Don H. Reavis

 Justice


Do not publish. 


1. See Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). 
2. The record does not reflect whether appellant was prosecuted for engaging in
inappropriate behavior with C.C.
3. All references to articles are to the Texas Code of Criminal Procedure, unless
otherwise designated. (Vernon 1997). 
4. Article 38.23, the Texas "exclusionary rule," provides: "No evidence obtained by an
officer or other person in violation of any provisions of the Constitution or laws of the State
of Texas, or of the Constitution or laws of the United States of America, shall be admitted
in evidence against the accused on the trial of any criminal case." 
5. The record does not reveal what information, if any, the officers shared with
appellant before they took him into custody. 
6. Aggravated sexual assault and indecency with a child are felony offenses. See
Tex. Pen. Code Ann. § 21.11(d) (Vernon 2003) and § 22.021(e) (Vernon Supp. 2004).
7. In reaching this conclusion, we are not unsympathetic to appellant's assertion that 
proof that the suspect is merely moving from place to place is insufficient. Busby v. State,
990 S.W. 2d 263, 270 (Tex.Cr.App. 1986), cert. denied, 528 U.S. 1081, 120 S.Ct. 803, 145
L.Ed.2d 676 (2000). However, we are bound to consider only that evidence available to
Taylor when he made the decision to order appellant's arrest. See id. At that time, Taylor
was aware only that appellant was at his and Edwards's home, packing his belongings into
the car, preparing to depart to an unknown destination. Taylor was unaware that appellant
owned another home in town; therefore, we do not believe the evidence available to Taylor
indicated appellant's plan was merely to move from his and Edwards's home to another
house in town. 
8. The Fourth Amendment to the United States Constitution provides: "The right of the
people to be secure in their persons, houses, papers, and effects, against unreasonable
search and seizure, shall not be violated . . . ." Similarly, the Texas Constitution provides,
in pertinent part: "The people shall be secure in their persons, houses, papers, and
possessions, from all unreasonable searches and seizures . . . ." Tex. Const. art. I, § 9. 


i-font-family:Tahoma;
 mso-hansi-font-family:Tahoma;
 mso-bidi-font-family:Tahoma;}
span.HeaderChar
 {mso-style-name:"Header Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Header;
 mso-bidi-font-size:10.0pt;
 font-family:"Times New Roman","serif";
 mso-ascii-font-family:"Times New Roman";
 mso-hansi-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";}
span.FooterChar
 {mso-style-name:"Footer Char";
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Footer;
 mso-bidi-font-size:10.0pt;
 font-family:"Times New Roman","serif";
 mso-ascii-font-family:"Times New Roman";
 mso-hansi-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";}
span.SpellE
 {mso-style-name:"";
 mso-spl-e:yes;}
span.GramE
 {mso-style-name:"";
 mso-gram-e:yes;}
.MsoChpDefault
 {mso-style-type:export-only;
 mso-default-props:yes;
 font-size:12.0pt;
 mso-ansi-font-size:12.0pt;
 mso-ascii-font-family:Arial;
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 mso-bidi-theme-font:minor-bidi;}
.MsoPapDefault
 {mso-style-type:export-only;
 margin-bottom:10.0pt;
 line-height:115%;}
 /* Page Definitions */
 @page
 {mso-footnote-separator:url("07-09-0384.cr%20opinion_files/header.htm") fs;
 mso-footnote-continuation-separator:url("07-09-0384.cr%20opinion_files/header.htm") fcs;
 mso-endnote-separator:url("07-09-0384.cr%20opinion_files/header.htm") es;
 mso-endnote-continuation-separator:url("07-09-0384.cr%20opinion_files/header.htm") ecs;}
@page Section1
 {size:8.5in 11.0in;
 margin:1.0in 1.0in 1.0in 1.0in;
 mso-header-margin:.5in;
 mso-footer-margin:.5in;
 mso-title-page:yes;
 mso-footer:url("07-09-0384.cr%20opinion_files/header.htm") f1;
 mso-paper-source:0;}
div.Section1
 {page:Section1;}
-->








NO. 07-09-0384-CR

                                                             

                                                   IN
THE COURT OF APPEALS

 

                                       FOR THE
SEVENTH DISTRICT OF TEXAS

 

                                                                 AT
AMARILLO

 

                                                                      PANEL
B

 

                                                                 JULY
23, 2010

                                            ______________________________

 

                                                         JASON P. LAMASTER, 

 

                                                                                                            Appellant

 

                                                                             v.

 

                                                        THE STATE OF TEXAS, 

 

                                                                                                            Appellee

                                         _________________________________

 

                      FROM THE 140th DISTRICT
COURT OF LUBBOCK COUNTY;

 

                         NO.  2007-416094; HON. JIM BOB DARNELL, PRESIDING

                                           _______________________________

 

Memorandum Opinion

_______________________________

 

Before QUINN, C.J., and CAMPBELL and
HANCOCK, JJ.

            Jason P. Lamaster
(appellant) appeals an order adjudicating him guilty of possessing a controlled
substance with intent to deliver.  His
three issues involve the restitution and adult probation fees the trial court
ordered that he pay.  We modify the
judgment and affirm it as modified.  

 

 

Issues One and Two  Restitution

The
first two issues we address involve whether the trial court erred in ordering,
via its judgment, that appellant pay over $41,000 in restitution.  We conclude that it did because the directive
was omitted from the sentence pronounced at trial, and the State so
concedes.  See Sauceda v. State, No. 07-09-0208, 2010
WL 1286472 (Tex. App.Amarillo April 5, 2010, no pet. h.) (holding that when the judgment directs the defendant to pay
restitution when that mandate was omitted from the sentence pronounced in open
court we redact the directive from the judgment).  Accordingly, the judgment will be modified to
remove reference to restitution.

Issue
Three  Probation Fee

Via
issue three, appellant asserts that the evidence was insufficient to support the
trial courts mandate that he pay an APO Fee of $840.  We sustain the issue.   

For
purposes of this issue we assume that the APO Fee refers to a fee payable to
the adult probation office.  We also
assume that both refer to the Community Supervision fee of $60 per month that
the trial court ordered appellant to pay as a condition for having the
adjudication of his guilt deferred.[1]   Having
so assumed, we note that the probation officer who testified at the hearing on
the States motion to adjudicate said nothing about appellant failing to pay an
APO, adult probation office, or community supervision fee.  Indeed, he said that the chrono
compiled by his office indicated that the sole condition which appellant failed
to perform encompassed the duty to report. 
He further testified that such omission occurred once.  And, though the State posits that the amount
of fees incurred could be calculated from the record, it cites us to nothing of
record suggesting, in any way, that appellant neglected to pay those fees as
incurred.  Without proof that the fees
went unpaid and having already assumed too many things in this appeal, we refuse
to surmise that the fees were unpaid simply because the trial court ordered
that they be paid or because they were included in the judgment tendered to the
trial court for execution.  Accordingly,
there is legally insufficient evidence that appellant owed any APO Fee, adult
probation fee, or community supervision fee and, therefore, the trial court
erred in ordering that he pay same.[2]

We
modify the judgment to remove from it all reference to the payment of restitution
and an APO Fee.  As modified, the
judgment is affirmed.  

 

                                                                                    Brian
Quinn

                                                                                    Chief
Justice

 

 

 

 

Do not publish.

  

 

 











[1]It certainly would be helpful to a reviewing court
for the litigants and trial court to assure that abbreviations and the like
used in a judgment are defined or explained somewhere in that judgment.  





[2] To the extent that the State suggests the amount ordered
was excessive and should be reduced to $240 because appellant was only on
probation for four months, the problem remains the same.  There is no evidence of record that he failed
to pay any amount while on probation.