

# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

## NO. 02-14-00144-CR

---

SAMUEL HELI VELEZ          APPELLANT

V.

THE STATE OF TEXAS          STATE

----------

## FROM CRIMINAL DISTRICT COURT NO. 4 OF TARRANT COUNTY
## TRIAL COURT NO. 1292745D

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

Appellant Samuel Heli Velez was charged with capital murder and sentenced to life in prison without parole. In a single point, he argues that the trial court abused its discretion by denying his motion to suppress. We will affirm.

---

[1]*See* Tex. R. App. P. 47.4.

## II. BACKGROUND

Velez and Jane Doe dated for seven months.[2]  Although Doe ended the relationship in March 2012, Velez later moved in with Doe and her parents after Velez's father died in May 2012.  Soon thereafter, Doe told Velez that he needed to leave, which he did, but he then began sending her and her family threatening text messages.  Doe reported these messages to the police; however, no arrests were ever made.  Doe and her mother eventually changed their phone numbers.

At approximately 7:30 a.m. on August 6, 2012, Velez broke into the home of Doe and her parents.  When Doe and her mother arrived home from work that afternoon, Doe discovered Velez waiting for her in her room with a knife.  Upon seeing him, she shouted "No" and ran away.  Velez encountered Doe's mother and stabbed her multiple times.  He then grabbed Doe, who was trying to call the police, and stabbed her multiple times.  When Velez went to wash his hands, Doe managed to run into the street screaming.  Velez caught her and drug her back to the porch; however, she continued screaming, causing Velez to panic and flee.  Doe made it to a nearby home, and an ambulance was called.

Police and paramedics arrived at approximately 6:00 p.m., and Doe informed them that Velez was responsible for the attack.  Paramedics quickly transported her to the hospital, where she informed an officer of Velez's name and date of birth.  This information, along with Velez's location and a description

---

[2]Jane Doe is a pseudonym.

2

of his car, was relayed to Detective Paine of the Fort Worth Police Department. Detective Paine had also received information indicating that Velez was going to try to escape to Mexico. At around 9:00 p.m., while the arrest warrant was being prepared, Detective Paine contacted Officer Tamayo and told him to find and arrest Velez.

At approximately 11:45 p.m., Officer Tamayo arrested Velez at the location given to him by Detective Paine. Velez told the arresting officers that he did not want to discuss the incident, and he was transported to the homicide office in silence. Immediately after Velez arrived at the office, the arrest warrant was signed and Detective Paine began the interrogation. Detective Paine gave Velez a brief summary of what was about to occur and then read Velez his rights. Velez stated that he understood his rights and agreed to speak with Detective Paine. He confessed to breaking into the house with the intent to talk and work things out with Doe or else he was going to end it with a knife. He also confessed to stabbing both Doe and her mother multiple times.

Throughout the course of the investigation, detectives obtained search warrants for the crime scene, as well as for Velez's DNA and cellphone records. Detective Adcock obtained a search warrant for Velez's car. Doe ultimately survived the attack; however, her mother was pronounced dead at the scene.

### III. STANDARD OF REVIEW

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex.

3

Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We give almost total deference to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor, but we review de novo application-of-law-to-fact questions that do not turn on credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002).

When the record is silent on the reasons for the trial court's ruling, or when there are no explicit fact findings and neither party timely requested findings and conclusions from the trial court, we imply the necessary fact findings that would support the trial court's ruling if the evidence, viewed in the light most favorable to the trial court's ruling, supports those findings. *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008); *see Wiede v. State*, 214 S.W.3d 17, 25 (Tex. Crim. App. 2007). We then review the trial court's legal ruling de novo unless the implied fact findings supported by the record are also dispositive of the legal ruling. *State v. Kelly*, 204 S.W.3d 808, 819 (Tex. Crim. App. 2006).

## IV. WARRANTLESS ARREST

Velez first argues that the trial court erred in denying his motion to suppress because all evidence stemming from his warrantless arrest was inadmissible. Under the Fourth Amendment, a warrantless arrest is unreasonable per se unless it fits into one of a "few specifically established and well delineated exceptions." *Minnesota v. Dickerson*, 508 U.S. 366, 372, 113

4

S. Ct. 2130, 2135 (1993); *Torres v. State*, 182 S.W.3d 899, 901 (Tex. Crim. App. 2005). A police officer may arrest an individual without a warrant only if probable cause exists and the arrest falls within one of the exceptions set out in the code of criminal procedure. *Torres*, 182 S.W.3d at 901; *see* Tex. Code Crim. Proc. Ann. arts. 14.01–.04 (West 2015).

Probable cause for a warrantless arrest requires that the officer have a reasonable belief that, based on the facts and circumstances within the officer's personal knowledge, or of which the officer has reasonably trustworthy information, an offense has been committed. *Torres*, 182 S.W.3d at 901–02. Information received from private citizens who witness a criminal act may be regarded as inherently reliable. *LeCourias v. State*, 341 S.W.3d 483, 488 (Tex. App.—Houston [14th Dist.] 2011, no pet.); *Cornejo v. State*, 917 S.W.2d 480, 483 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd) (citing *Esco v. State*, 668 S.W.2d 358, 360–61 (Tex. Crim. App. [Panel Op.] 1982)). This rule also applies if the citizen is the victim of a crime. *Cornejo*, 917 S.W.2d at 483. Probable cause must be based on specific, articulable facts rather than the officer's mere opinion. *Torres*, 182 S.W.3d at 902. We use the "totality of the circumstances" test to determine whether probable cause existed for a warrantless arrest. *Id.*

Velez argues that police officers did not have probable cause to arrest him without a warrant. The Texas Code of Criminal Procedure permits warrantless arrests in situations where police officers have probable cause to believe a person committed an offense involving family violence. Tex. Code Crim. Proc.

5

Ann. art. 14.03(a)(4). Family violence includes acts committed against a victim with whom the actor has or has had a dating relationship that are intended to result in physical harm, bodily injury, or assault. *See* Tex. Fam. Code Ann. §§ 71.004(3), 71.0021(a) (West 2014). Here, the totality of the circumstances supported a reasonable belief that Velez had committed an act of family violence. While waiting for the ambulance to arrive, Doe told her neighbors that Velez was responsible for the attack. Likewise, she told the same thing to paramedics and an officer that she later spoke with at the hospital. Additionally, Detective Paine received a description of Velez's car and information regarding his location. This information, when coupled with the information provided by Doe, made it reasonable to believe that Velez had committed an act of family violence. *See Torres*, 182 S.W.3d at 902; *Cornejo*, 917 S.W.2d at 482–83 ("[T]he police had an identification from an inherently reliable witness corroborated by other information provided to the police prior to the identification. These facts and circumstances were sufficient to warrant [probable cause].").

Moreover, Detective Paine had been informed that Velez intended to flee to leave the country. Texas law allows warrantless arrests where there is satisfactory proof, upon the representation of a credible person, that a felony has been committed and the offender is about to escape. Tex. Code Crim. Proc. Ann. art. 14.04. This statute can be broken down into four essential elements: (1) the informant must be credible; (2) the offense must be a felony; (3) there must be satisfactory proof that the offender is about to escape; and

(4) there must be no time to procure a warrant.[3]  *Fry v. State*, 639 S.W.2d 463, 469 (Tex. Crim. App. [Panel Op.]), *cert. denied*, 639 S.W.2d 463 (1982).  Under this article, "satisfactory proof" is equivalent to probable cause, and "credible persons" refers to ordinary citizens relating information of which they had direct knowledge.  *Salazar v. State*, 688 S.W.2d 660, 663 (Tex. App.—Amarillo 1985, no pet.).

Officers had satisfactory proof from a credible source that Velez would try to escape.  Specifically, Velez's boss informed police that she had talked to Velez's roommate, who had said that Velez intended to flee to Mexico.  And police were aware that Velez had access to a vehicle and that he had been seen running from the crime scene.  Velez's roommate was a credible person within the meaning of this statute because he had provided other information that had proven to be accurate and because his information corresponded with what officers already knew.  *See Oliver v. State*, 731 S.W.2d 149, 154 (Tex. App.— Fort Worth 1987, pet. ref'd) (holding that informant was a credible person within the meaning of article 14.04 because she had previously given accurate information and her information corresponded with the known facts of the offense).  Accordingly, the totality of the circumstances made it reasonable for

---

[3]There is no question that the offense in this case was a felony. Additionally, officers were in the process of obtaining a warrant but had not yet gotten it signed when Velez was arrested.  This fact demonstrates that the officers had no time to procure a warrant.

Detective Paine to send officers to arrest Velez prior to the completion of the arrest warrant.

Because the arrest and subsequent search of Velez were lawful, the trial court did not err by denying Velez's motion to suppress evidence resulting from his warrantless arrest. *See Atkins v. State*, 919 S.W.2d 770, 774 (Tex. App.—Houston [14th Dist.] 1996, no pet.).

### V. STATEMENTS FROM INTERROGATION

Velez additionally argues that Detective Paine violated his Fifth Amendment right to silence because he initiated questioning after Velez had already told arresting officers that he did not want to talk about what had happened.[4] However, because Velez never actually invoked his right to silence prior to meeting with Detective Paine, we cannot agree.

Statements obtained during custodial interrogation are inadmissible unless the State "demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S. Ct. 1602, 1612 (1966). This protection applies when a person in custody is subjected to express questioning or when any words or actions are used by the police that the police should know are reasonably likely to elicit an incriminating

---

[4]Velez also contends that this evidence should be suppressed because it was obtained pursuant to his warrantless arrest; however, because we have concluded that the warrantless arrest was lawful, there is no need for us to address this issue.

8

response. *Rhode Island v. Innis*, 446 U.S. 291, 300–01, 100 S. Ct. 1682, 1689–90 (1980).

Velez argues that he invoked his right to silence when an arresting officer asked him what had happened and Velez said that he did not want to talk about it. However, routine inquiries; questions incident to booking; broad, general questions such as "what happened" upon arrival at the scene of a crime; and questions mandated by public safety concerns do not constitute custodial interrogation. *Jones v. State*, 795 S.W.2d 171, 174 n.3 (Tex. Crim. App. 1990). Similarly, offhand remarks not designed to elicit any kind of response do not constitute an interrogation either. *Janecka v. State*, 739 S.W.2d 813, 828 (Tex. Crim. App. 1987).

Here, the officer's question did not constitute custodial interrogation because it constituted a broad, general question. Similarly, arresting officers were not attempting to elicit incriminating information from Velez, nor did they ask any other questions falling outside the scope of general booking inquiries. *See Jones*, 795 S.W.2d at 175 ("The United States Supreme Court has excluded several police practices from the scope of the self-incrimination privilege because they seek only physical evidence, not testimonial confessions of guilt."). Officer Tamayo claims that he only asked Velez his name and date of birth when he placed him under arrest. Additionally, one of the other arresting officers, Officer Riggall, claimed that no custodial interrogation occurred and that after Velez was placed in the patrol vehicle, he was transported in silence. Assuming one of the

9

officers did ask Velez about what had happened, the fact that Officers Tamayo and Riggall both believe no interrogation took place helps demonstrate that the arresting officers were not attempting to elicit any sort of incriminating response. *See Janecka*, 739 S.W.2d at 828–29 ("[T]he apparently offhand remarks of the officers did not constitute interrogation. They did not engage in a lengthy harangue and nothing in the record suggested that their remarks were designed to elicit a response."). Velez could not yet invoke his Fifth Amendment right because no custodial interrogation had occurred. *See Melton v. State*, 790 S.W.2d 322, 326 (Tex. Crim. App. 1990) ("When appellant made the statement[,] the investigation had not yet shifted from the investigatory to the accusatory or custodial stage. As such, there was no compulsion and appellant's Fifth Amendment rights had not come into play."). Accordingly, we cannot agree that detective Paine acted to "badger" Velez when he later approached him for questioning.

Further, when Velez's Fifth Amendment privilege did eventually come into play, he voluntarily waived it. When an accused person is properly warned and understands his rights, he may choose to knowingly and intelligently waive them in order to make a statement. *Miranda*, 384 U.S. at 479, 88 S. Ct. at 1630. Any statement made thereafter is admissible as evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.22 § 5 (West Supp. 2014) ("Nothing in this article precludes the admission . . . of a voluntary statement."). Paine expressly warned Velez of his rights pursuant to Texas law before any questioning began. *See id.* Velez

10

told Paine he understood his rights, and when Paine asked if Velez would be willing to speak to him, Velez said, "Yeah, that's fine." Velez voluntarily waived his privilege against self-incrimination when he agreed to speak with Detective Paine. Thus, the video of his confession and all evidence stemming therefrom were admissible. We hold that the trial court did not err by denying Velez's motion to suppress, and we overrule his sole point.

## VI. CONCLUSION

Having overruled Velez's sole point, we affirm the trial court's judgment.


/s/ Bill Meier
BILL MEIER
JUSTICE

PANEL:  WALKER, MEIER, and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  August 20, 2015

11